# 13-4817-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤◄◄

ANDREW ABEYTA,

*Plaintiff-Appellant,*

*v.*

CITY OF NEW YORK, NANHAO CHEN, ALLAN TAEZA,

*Defendants-Appellees,*

*and*

JOHN DOE, the third named defendant being fictitious and representing
a police officer whose identity currently is unknown to plaintiff,

*Defendant.*

———————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

SIVIN & MILLER, LLP
*Attorneys for Plaintiff-Appellant*
20 Vesey Street, Suite 1400
New York, New York 10007
212-349-0300

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………………..iv

**JURISDICTIONAL STATEMENT**…………………………………………1

**ISSUES PRESENTED FOR REVIEW**……………………………………...1

    On The Underlying Judgment…………………………………………...1

    On The Attorneys' Fees Award……..…………………………………...3

**STATEMENT OF THE CASE**…………………………………………….4

    The Parties' Contentions And Proofs…………………………………5

    Settlement Discussions…………………………………………………14

    Motions For Judgment As A Matter Of Law…………………………...14

    Evidentiary Rulings…………………………………………………..17

        *The Email*…………………………………………………………17

        *Spoliation Sanctions*……………………………………………18

        *NYPD Guidelines Re Emotionally Disturbed Persons*………………...19

        *Taeza's Force Monitoring Status*………………………………19

        *Precluding Plaintiff's Neuropsychologist*…………………………...20

        *Aborting The Testimony Of Plaintiff's Treating Psychologist*………21

    The Verdict……………………………………………………………21

    The Attorneys' Fees Motion…………………………………………….23

## ARGUMENT

I.  THE COURT ERRED IN DISMISSING PLAINTIFF'S
FIRST AMENDMENT RETALIATION CLAIM ON THE
GROUND THAT DEFENDANTS' CONDUCT DID NOT
CHILL PLAINTIFF'S SPEECH……………………………………………25

II.  THE CUMULATIVE EFFECT OF THE COURT'S
ERRONEOUS  EVIDENTIARY RULINGS REQUIRES
REVERSAL AND REMAND FOR A NEW TRIAL……………………………26

A.  The Court Erred In Allowing Into Evidence An
Email To Plaintiff That Referenced An Opinion By
A Third Party Regarding The Meager Value Of
Plaintiff's Potential Lawsuit…………………………………………..28

B. The Court Erred In Granting Defendants' Untimely
Motion For Spoliation Sanctions With Respect To
Plaintiff's Deactivation Of His Facebook Account………………..30

C.  The Court Erred In Refusing To Allow Evidence
Of Defendants' Knowledge of NYPD Guidelines
For Handling Emotional Disturbed Persons (EDPs),
Where Plaintiff Claimed That Defendants Did Not
Legitimately Believe Him To Be An EDP But Had
Him Detained As Such To Punish Him For What
They Perceived As His Insolence Towards Them…………………33

D.  The Court Erred In Refusing To Allow Evidence
Of Taeza's "Force Monitoring" Status For The
Limited Purpose Of Demonstrating That Taeza
Had A Motive To Falsely Label Plaintiff An EDP………………..36

E. The Court Erred In Refusing To Allow Plaintiff's
Expert Neuropsychologist To Testify That Plaintiff's
Traumatic Brain Injury Resulted From Defendants'
April 14, 2012 Use Of Force……………………………………….38

F.  The Court Erred In Aborting The Testimony Of
Plaintiff's Treating Psychologist On The Ground That
He Had Not Provided Certain Documents To Defendants………40


III.  THE COURT ERRED IN AWARDING
ATTORNEYS' FEES TO DEFENDANTS…………………………………42

A.  Defendants Did Not Demonstrate That Plaintiff's
Lawsuit Was Frivolous, Unreasonable, Or Without
Foundation…………………………………………………………..43

B.  The Court Erred In Awarding Attorneys' Fees
Where Neither Defendants Nor The Court Identified
Any Fees That Were Expended "Solely Because Of
The Frivolous Allegations"…………………………………………47

C.  The Court Erred In Awarding $211,747.50
`        Against A 25-Year-Old Unemployed Plaintiff Who
Has No Independent Means of Support……………………........52


**CONCLUSION**…………………………………………………………..54

**CERTIFICATE OF COMPLIANCE**…………………………………..55

# TABLE OF AUTHORITIES

**Page**

**Cases**

Abeyta v. City of New York, 2014 U.S. Dist. LEXIS 33766
(S.D.N.Y. 2014) ......................................................................................4

AFSCME v. County of Nassau, 96 F.3d 644 (2nd Cir. 1996)...........................46, 50

Anderson v. City of New York, 2013 U.S. Dist. LEXIS 168189
(S.D.N.Y. Nov. 19, 2013) ......................................................................15

Atkins v. New York City, 143 F.3d 100 (2nd Cir. 1998).......................................44

Baez v. Delta Airlines, Inc., 2013 U.S. Dist. LEXIS 133628
(S.D.N.Y. 2013) ....................................................................................31

Balintulo v. Daimler AG, 727 F.3d 174 (2nd Cir. 2013).........................................42

Barber v. City of Chicago, 725 F.3d 702 (7th Cir. 2013).......................................27

Berkovich v. Hicks, 922 F.2d 1018 (2nd Cir. 1990) ...............................................37

Braunstein v. Ariz. DOT, 683 F.3d 1177 (9th Cir. 2012).......................................48

Broyles v. Texas, 2009 U.S. Dist. LEXIS 64080 (S.D. Tex. 2009) .......................52

Bultema v. Benzie County, 146 Fed. Appx. 28 (6th Cir. 2005) .............................51

Byrne v. Town of Cromwell, 243 F.3d 92 (2nd Cir. 2001)....................................30

Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2nd Cir. 2012) .........................27

Christiansburg Garment Co. v. Equal Employment Opportunity
Comm'n, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978)................45, 52

City of Houston v. Hill, 482 U.S. 451 (1987)........................................................26

Coats v. Pierre, 890 F.2d 728 (5th Cir.  1989).......................................................50

Coe v. Bown of Blooming Grove, 429 Fed. Appx. 55 (2nd Cir. 2011) ...................42

Cooper v. Carl A. Nelson & Co., 211 F.3d 1008 (7th Cir. 2000) ......................38, 39

Cupp v. Ziegler, 972 F. Supp. 421  (E.D. Mich. 1997) ........................................46

Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993)........................................39

Davy v. CIA, 456 F.3d 162 (D.C. Cir. 2006) .........................................................42

Dorsett v. American Isuzu Motors, Inc., 805 F. Supp. 1212
    (E.D. Pa. 1992)...............................................................................................51, 53

Dorsett v. County of Nassau, 732 F.3d 157 (2nd Cir. 2013)............................25, 29

E.E.O.C. v. Kimbrough Investment Co., 703 F.2d 98 (5th Cir. 1983)....................46

Ehrlich v. Inc. Village of Sea Cliff, 389 Fed. Appx. 59 (2nd Cir. 2010) ................50

El-Nahal v. Yassky, 2014 U.S.  Dist. LEXIS 13522
    (S.D.N.Y. Jan. 29, 2014)......................................................................................15

Farrar v. Hobby, 506 U.S. 103 (1992) ...................................................................44

Figures v. Bd. of Pub. Utils., 967 F.2d 357 (10th Cir. 1992) .................................50

Fox v. Vice, 131 S. Ct. 2205 (2011) ................................................................*passim*

Galapo v. City of New York, 95 NY2d 568 (2000) .................................................33

Garcia v. City of New York, 2013 U.S. Dist. LEXIS 147149
    (E.D.N.Y. 2013).....................................................................................................35

Garner v. Cuyahoga County Juvenile Court, 554 F.3d 624
    (6th Cir. 2009)........................................................................................................52

Goodman v. Pennsylvania Turnpike Comm'n, 293 F.3d 655
    (3rd Cir. 2002).......................................................................................................33

Gonzalez v. United States, 2013 U.S. Dist. LEXIS 123950
    (S.D.N.Y. 2013) .....................................................................................................36

Grantley v. City of New York, 2013 U.S. Dist. LEXIS 165800
(S.D.N.Y. Nov. 21, 2013) ....................................................................15

Haskell v. Kaman Corp., 743 F.2d 113 (2nd Cir. 1984)................................26

In Re Estate of Jackson v. County of Suffolk,
2014 U.S. Dist. LEXIS 46521 (E.D.N.Y. 2014)................................30

Jackson v. City of New York, 2013 U.S. Dist. LEXIS 55186
(E.D.N.Y. 2013)................................................................................26

James v. New York City Health & Hospital's Corp.,
2014 U.S. Dist. LEXIS 52145 (S.D.N.Y. Apr. 15, 2014)................16

Jones v. Continental Corp., 789 F.2d 1225 (6th Cir. 1986)...................43

Kerman v. City of New York, 374 F.3d 93 (2nd Cir. 2004) ..................44

Kettering v. Harris, 2009 U.S. Dist. LEXIS 57623 (D. Colo. 2009)................46, 47

Lasala v. Marfin Popular Bank Pub. Co., 410 Fed. Appx. 474
(3rd Cir. 2011)................................................................................30

Law v. Corizon Med. Servs., 2014 U.S. Dist. LEXIS 66395
(S.D.N.Y. May 12, 2014)................................................................16

LeBlanc-Sternberg v. Fletcher, 143 F.3d 765 (2nd Cir. 1998)................43

Mahan v. City of New York, 2005 U.S. Dist. LEXIS 14322
(E.D.N.Y. 2005)................................................................................36

Milburn v. Girard, 455 F. Supp. 293 (E.D. Pa 1978) ............................29

Myers v. City of West Monroe, 211 F.3d 289 (5th Cir. 2000)................43

Orbit One Commc'ns v. Numerex Corp. 271 F.R.D. 429
(S.D.N.Y. 2010) ................................................................................30

Packer v. United States, 106 F. 906 (2nd Cir. 1901)................................29

Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100
(2nd Cir. 2001)................................................................................46

People v. Speringo, 258 AD2d 379 (1st Dept. 1999) ................................................33

Perez v. City of New York, 2013 U.S. Dist. LEXIS 168191
    (S.D.N.Y. Nov. 21, 2013) ................................................................................15

R.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117 (9th Cir. 2011) ........................44

Reck v. Pacific-Atlantic S.S. Co., 180 F.2d 866 (2nd Cir. 1950)............................51

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99
    (2nd Cir. 2002) ................................................................................................30

Rivas v. Brattesani, 94 F.3d 802 (2nd Cir. 1996) ....................................................27

Robison v. Via, 821 F. 2d 913 (2nd Cir. 1987) ........................................................45

Santana v. Artus, 2009 U.S. Dist. LEXIS 126828 (S.D.N.Y. 2009) ........................33

Simpson v. City of New York, 2013 U.S. Dist. LEXIS 173472
    (S.D.N.Y. Dec. 13, 2013)..................................................................................15

Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161 (2nd Cir. 2004) ...............................43

Storman v. Klein, 395 Fed. Appx. 790 (2nd Cir. 2010) ...........................................25

Tancredi v. Metro. Life Ins. Co., 378 F.3d 220 (2nd Cir. 2004) .............................45

United States ex rel. Ubl v. IIF Data Solutions, 650 F.3d 445
    (4th Cir. 2011)..................................................................................................46

United States v. Graham, 504 Fed. Appx. 63 (2nd Cir. 2012) ................................26

United States v. Local 1804-1, Int'l Longshoremen's Ass'n,
    44 F.3d 1091 (2nd Cir. 1995)...........................................................................40

United States v. Seale, 600 F.3d 473(5th Cir. Miss. 2010),
    cert. den., 131 S Ct 163 ...................................................................................39

Velius v. Twp. Of Hamilton, 466 Fed. Appx. 133 (3rd Cir. 2012) ..........................42

Walder v. United States, 347 U.S. 62 (1954) ...........................................................33

Walmsley v. City of Philadelphia, 872 F.2d 546 (3rd Cir. 1989) ...........................51

White v. N.H. Dep't of Employment Sec., 455 U.S. 445 (1982)............................45

Wigfall v. Sodexo, Inc., 539 Fed. Appx. 942 (11th Cir. 2013) ..............................45

Yanliang Liu v. United States DOJ, 455 F.3d 106 (2nd Cir. 2006) .......................46

Ying Wang v. Yum! Brands, Inc., 2008 U.S. Dist. LEXIS 11188
    (E.D.N.Y. 2008) ....................................................................................38, 39

**Statutes**

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1332 ................................................................................................6

42 U.S.C. § 1983 ........................................................................................*passim*

42 U.S.C. § 1988 ...........................................................................1, 4, 45, 50

**Rules**

Fed. R. Civ. P. 26(a)(2)...............................................................................12, 13, 51

Fed. R. Civ. P. 26(a)(2)(B) ................................................................................12

Fed. R. Civ. P. 50(a).................................................................................5, 16, 43

Fed. R. Civ. P. 54(d)(2)...................................................................................1, 4

Fed. R. Evid. 403 ............................................................................................30

Fed. R. Evid. 703 ............................................................................................38

# JURISDICTIONAL STATEMENT

Federal subject matter jurisdiction is afforded by 42 U.S.C. § 1983 in that plaintiff's complaint alleges, *inter alia*, violations of his federal civil rights guaranteed under the Fourth Amendment to the United States Constitution. Appellate jurisdiction is afforded by 28 U.S.C. § 1291, which permits an appeal "from all final decisions of the district courts." This appeal is from the final judgment entered after a jury verdict and from the subsequent decision and order of the district court granting defendants' motion for attorneys' fees pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2). The final judgment was entered November 22, 2013 and the decision and order granting the post-trial motion was entered March 7, 2014. A notice of appeal from the judgment was timely filed on December 23, 2013 and an amended notice of appeal from the post-trial decision and order was timely filed on March 10, 2014.

# ISSUES PRESENTED FOR REVIEW

**On The Underlying Judgment**

1. Whether the district court erred in dismissing plaintiff's First Amendment retaliation claim on the ground that defendants' actions did not chill plaintiff's speech.

2. Whether the district court erred in allowing into evidence an email addressed to plaintiff conveying, among other things, the following opinion from a

friend of a friend regarding the meager value of plaintiff's case and the likelihood of obtaining a quick, cheap settlement: *"My friend says that the city always settles and these types of suits never go to trial. He doesn't think that you would necessarily recover much, but probably enough to cover the cost of the bike."*

3. Whether the district court erred in granting defendants' motion to sanction plaintiff for spoliation of evidence with respect to the deactivation of his Facebook account where defendants waited until the second day of trial to file their motion and there was no showing that the deactivation caused any evidence to be destroyed.

4. Whether the district court erred in refusing to allow evidence of defendants' knowledge of NYPD guidelines for handling "emotionally disturbed persons" (EDPs), where plaintiff claimed that defendants did not legitimately believe him to be an EDP but had him detained as such to punish him for what they perceived as his insolence towards them.

5. Whether the district court erred in refusing to allow evidence of defendant Allan Taeza's "Force Monitoring" status for the limited purpose of demonstrating that Taeza had a motive to falsely label plaintiff an EDP after he used force against him.

6.  Whether the district court erred in refusing to allow plaintiff's expert neuropsychologist to testify that plaintiff's traumatic brain injury was the result of defendants' April 14, 2012 use of force.

7.  Whether the district court erred in aborting the testimony of plaintiff's treating psychologist on the ground that he had not provided certain documents to defendants.

**On The Attorneys' Fee Award**

8.  Whether the district court, after determining that plaintiff's proofs raised triable issues of fact sufficient to defeat defendants' motions for summary judgment and defendants' Rule 50(a) motions, erroneously determined after the verdict that plaintiff's entire case was frivolous and warranted the imposition of attorneys' fees.

9.  Whether in a lawsuit that involved at least some claims that indisputably were non-frivolous the district court erred in granting defendants' motions for attorneys' fees where neither defendants nor the court identified any fees that were "expended solely because of the frivolous allegations." *See* Fox v. Vice, 131 S. Ct. 2205, 2218 (2011).

10.  Whether the district court erred in awarding $211,747.50 against a 25-year-old unemployed plaintiff who has no independent means of support.

## STATEMENT OF THE CASE

Plaintiff appeals from the final judgment entered November 22, 2013 after a jury verdict in favor of defendants and from the March 7, 2014 decision and order of the Hon. Katherine B. Forrest granting defendants' motion for attorneys' fees pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2). The March 7, 2014 order is reported at Abeyta v. City of New York, 2014 U.S. Dist. LEXIS 33766 (S.D.N.Y. 2014).

Plaintiff asserts that the district court erroneously dismissed his First Amendment retaliation claim on the ground that defendants' actions did not cause an actual chill in plaintiff's speech. With respect to his remaining causes of action, plaintiff asserts that the court made various erroneous evidentiary rulings at trial that likely swayed the jury in a material fashion in favor of defendants. Plaintiff also asserts that various comments made by the district court call into question the court's impartiality. Plaintiff therefore requests that the judgment entered in favor of defendants be reversed and that this Court remand the case for a new trial before a different judge.

Plaintiff also seeks reversal and vacatur of the post-trial order awarding defendants attorneys' fees. In that regard, this appeal raises the question of whether in a lawsuit pursuant to 42 U.S.C. § 1983 a district court can characterize a plaintiff's entire case as "frivolous" and assess attorneys' fees

against that plaintiff where the court previously determined that all of plaintiff's causes of action were sufficiently meritorious to survive two motions for summary judgment and that all but one of plaintiff's causes of action were sufficient to survive two motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a). This appeal also raises the question of whether in a lawsuit that indisputably includes some non-frivolous claims a district court can award *any* attorneys' fees without first identifying those fees incurred by defendants solely in defense of the allegedly frivolous claim(s). Finally, this appeal raises the question of whether an attorneys' fee award of $211,747.50 against an unemployed, 25-year-old plaintiff with no independent means of support is excessive.

### **The Parties' Contentions And Proofs**

In this action, plaintiff, a then 24-year-old, gainfully employed Columbia University graduate with no criminal record and no history of mental illness, alleges that on April 14, 2012 he was falsely arrested and subjected to excessive force by defendants NYPD Officers Nan Hao Chen (Chen) and Allan Taeza (Taeza). (A318-325, A377-378).[1] Plaintiff's amended complaint pleads causes of action for assault and battery, false arrest, and intentional infliction of

---

[1] Numbers in parentheses following the letter "A" (ie. "A250" "A475") refer to pages from the Appendix. Where an Appendix page contains four pages from the trial transcript, citation to a particular portion of the trial transcript will be to the Appendix page followed by the trial transcript page and line (ie. "A10 at p. 14, line 2").

emotional distress under New York state law,[2] excessive force and false arrest pursuant to 42 U.S.C. § 1983, and retaliation in violation of the First Amendment to the United States Constitution. (A318-325).

Plaintiff claims that after he verbally criticized Chen regarding the latter's refusal of plaintiff's repeated requests for assistance,[3] the two NYPD officers exited their vehicle, grabbed plaintiff, slammed him against the hood of their car, and then kept him tightly handcuffed and prone against the hood for over an hour. (A90 at p. 39, line 15 to A91 at p. 44, line 25, A199). The officers then had plaintiff forcibly transported to Bellevue Medical Center under the guise of him being an intoxicated, emotionally disturbed person (EDP). (A90-91, A381-383). Plaintiff further claims that once at Bellevue, and apparently satisfied that they had sufficiently taught him a lesson for his insolence, defendants uncuffed him and abruptly left the hospital without charging him with any crime and without ensuring that he undergo the psychiatric examination that, according to NYPD guidelines, is required of all EDPs before the escorting officers are permitted to

---

[2] Plaintiff was a citizen of California and defendants were citizens of New York when the action was commenced. Accordingly, the district court had independent jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1332.

[3] Plaintiff testified that after a bicycle he had rented for the day had become inoperable and he was unable to get a taxi to transport him and the bike back to the rental shop, he approached Chen and Taeza, who were seated in a parked police vehicle, to ask for some assistance or guidance. Chen essentially ignored plaintiff, telling him two or three times "we're occupied" and rolling his window up. Plaintiff then criticized Chen: "So I sarcastically said: 'You really look occupied sitting there doing nothing. Thanks for doing your civic duty.'" (A91 at p. 41, lines 3-11).

leave the hospital.  (A96, A383-384, A469, A490).  After the officers left, plaintiff was told by hospital staff that he was free to go.

Chen acknowledged, albeit reluctantly, that his and Taeza's use of force against and detention of plaintiff followed plaintiff's verbal criticism of Chen.  When asked whether Abeyta criticized him for failing to do his "civic duty," Chen responded:  "I don't remember, but it sounds very familiar."  (A176 at p. 64, lines 5-7).  Defendants alleged, however, that they used only necessary force to restrain plaintiff and that they had probable cause to detain and remove plaintiff to Bellevue because he appeared intoxicated and was acting erratically.  (A346-348, A362-363).  Defendants also alleged that while they left Bellevue before ensuring that plaintiff was evaluated by a psychiatrist, they did so only after receiving assurances from hospital staff that security would be called in the event plaintiff acted up again.  (A168).

Plaintiff testified that the following day, Sunday, he began to experience soreness in his neck, back, and shoulders and that he "felt like [he] went through a football game."  (A101 at p. 83, line 23 to p. 84, line 4).  Photographs taken of plaintiff in the days immediately following the incident depict bruising to both wrists as a result of the tight handcuffs, as well as bruising to the left shoulder.  (A518-520).

Approximately one month after the incident plaintiff sought counseling with Dr. Steven Reisner, a psychologist, to address, among other things, feelings of extreme anxiety following the April 14, 2012 incident. (106). A March 13, 2013 report from Dr. Reisner—exchanged with defendants during pre-trial discovery—summarized the course of psychotherapy and set forth the doctor's conclusion that plaintiff was suffering from symptoms of post-traumatic stress disorder related to his encounter with the police. (A547).

The most significant injury alleged by plaintiff, however, was a traumatic brain injury, the cause of which was challenged by defendants throughout the litigation. Specifically, defendants argued that plaintiff was unable to establish definitively that his head was struck when he was slammed against the hood of the police car; they also argued that plaintiff's years of playing football in high school and college and his documented history of at least one prior concussion made it likely that any traumatic brain injury predated the April 14 incident. (A119-120, A366-370).

Plaintiff testified that while he was certain that his head did strike the hood of the police vehicle, his certainly was borne of inference and not of a specific recollection of the actual head blow. (A132 at p. 204, lines 15-17). Specifically, plaintiff recounted that as he was propelled by defendants face first towards the hood of the vehicle he quickly turned his head to avoid striking his

nose; his next recollection was that he "came to" feeling the warmth of the hood against his cheek and being aware of the presence of persons who had not been there earlier. (A91 at pp. 42-44; A102 at pp. 88-89; A132 at pp. 204-205).

Chen was uncertain whether plaintiff's head struck the hood. He acknowledged at trial that at a minimum plaintiff's stomach and chest struck the hood, but claimed he wasn't paying attention to plaintiff's head. (A180 at p. 80, lines 10-25). Taeza was never asked, and did not testify, whether plaintiff's head struck the hood. (A189-194).

Plaintiff testified that it was not until the day after the incident that he felt "dull, just like my brain was not cooperating. And I had really, really horrible headaches, just feeling extremely off." (A101 at p. 83, lines 15-21). On Monday plaintiff reported to work—he was employed as a sustainability analyst for a Manhattan engineering firm—but was extremely fatigued, could not focus, was hypersensitive to sounds and overhead lights, felt off balance, threw up, and eventually had to be taken home by a co-worker. (A101-102). Later that day plaintiff sought medical treatment at a local Urgent Care Center which, after performing certain tests, had plaintiff transferred by ambulance to the emergency room of NYU Medical Center. (A102-103). The record from the Urgent Care Center (A521) documents the following history: "24 yr. old was cuffed by cops this weekend and head hit top of car. Pt. believes he had LOC & no syncope. Pt.

seen [illegible]." (A522). The results of a coordination exam at Urgent Care document that "Pt. unable walk in straight line." (A523). Urgent Care diagnosed "Concussion – R/O bleed." (A523).

The Ambulance Call Report for the trip to NYU provides, in part, the following history: "Pt. is a 24 y/o male found ambulating on scene A&OX3 c/o dizziness and a headache since Saturday. Pt. Sts. On Saturday his head was thrown against a vehicle and he was not evaluated @ a hospital. Pt. sts. he has also experienced some vomiting, nausea, and some neck, back and shoulder soreness. Pt. sts. he has also experienced some sensitivity to light…." (A531). The "Presumptive Diagnosis" was listed as "S/P Concussion." Id.

The NYU emergency room record contains the following history: "24 y/o M c/o H/A, dizziness, nausea s/p head trauma 4/14/12. Pt. states his head was thrown against a car hood, ? LOC, + nausea, + emesis X2 today, ….Feels like prior concussions." (533). A head CT scan performed at NYU was read as negative, and plaintiff was prescribed Zofran and Norco and discharged with a diagnosis of "Post-Concussion Syndrome." (A534).[4]

Plaintiff testified that in the ensuing weeks he experienced consistent migraines, dizziness, loss of balance, insomnia, and fatigue and could not work

---

[4] All of these medical records were received in evidence at trial, albeit with an instruction to the jury that it could not consider the records for the truth of the statements contained therein. (A631 at pp. 9-10).

effectively at his job. (A104). Unable to accommodate his limitations, plaintiff's employer—who four months before the incident had given him a favorable evaluation and a pay raise—terminated plaintiff in June of 2012, forcing him to give up his Manhattan apartment and move back in with his single mother in California. (A106-107). There plaintiff underwent extensive neuropsychological evaluation at the Sports Concussion Institute. (A109). A June 4, 2013 report from the Institute, generated after a five-day evaluation (A592), notes that plaintiff suffers from "vestibular dysfunction" and significant deficits in, among other things, "[p]sychomotor speed and overall speed of mental processing." (A603). The report concludes with the following diagnostic impressions:

> 850.5  Concussion with Loss of Consciousness of Unspecified Duration
>
> 310.8 Post-Concussion Syndrome (Chronic), with disturbance of speed of mental processing and working memory
>
> 309.28  Adjustment Disorder with Mixed Anxious and Depressed Mood.

(A604).

Recognizing that plaintiff's prior history of concussion and football injuries potentially raised an issue of causal connection between the April 14, 2012 incident and plaintiff's subsequent cognitive difficulties, plaintiff's counsel consulted Dr. Wayne A. Gordon, a neuropsychologist renowned as an expert not

only in traumatic brain injury but also in its relation to injuries sustained from playing football. (A315). Gordon is a Chief Investigator in a study, underwritten by a grant from the National Institutes of Health and the National Football League, into sport-related concussions and traumatic brain injury. (A315, A589-590).

As set forth in his report, which was exchanged with defendants pursuant to Fed. R. Civ. P. 26(a)(2) (A549-554), Gordon reviewed all of the records of plaintiff's treatment since April 14, 2012 and of a concussion plaintiff sustained two years before the incident; he also was made aware of the history of prior untreated head traumas that plaintiff had experienced as a football player. Gordon also administered his own neuropsychological testing of plaintiff. Finally, Gordon reviewed extensive evidence of plaintiff's premorbid functioning, including but not limited to plaintiff's high school and college transcripts, his SAT scores, and his employer's performance evaluation. Gordon concluded that plaintiff suffers from significant cognitive and physical impairments secondary to a traumatic brain injury or concussion he received during the April 14, 2012 incident with the police. (A554).

Defendants did not challenge the sufficiency of Gordon's report under Fed. R. Civ. P. 26(a)(2)(B) and did not move in limine to preclude Gordon from testifying that plaintiff's traumatic brain injury was causally connected to the April 14 incident. Defendants also elected not to have plaintiff examined by their own

expert.  And while they claimed for the first time after trial—in support of their fee application—that they had retained their own neuropsychologist to assist them in evaluating plaintiff's medical records (A251), defendants never exchanged a report by that expert pursuant to Fed. R. Civ. P. 26(a)(2), much less called or even identified the expert as a potential trial witness.  (A308, A646-647).

Defendants did, however, challenge the extent of plaintiff's claimed traumatic brain injury and argued that plaintiff was exaggerating the severity of his symptoms.  Thus, while plaintiff testified that he had difficulty focusing on computer screens and was hypersensitive to crowds, loud noises, and bright lights, defendants elicited on cross examination that since April 14, 2012 plaintiff purchased at least one video game (A143 at p. 249) and on more than one occasion visited a crowded strip club where there were strobe lights.  (A124 at p. 176).  Although he offered potentially benign explanations for these activities,[5] plaintiff acknowledges that the jury reasonably could have determined that those explanations were not credible.

---

[5]  Plaintiff testified that his attempt to play the video game was unsuccessful. (A143 at p. 249, lines 6-15).  He also testified that notwithstanding his difficulty in dealing with loud noises, bright lights, and crowds, he went to the strip club out of loneliness (A131-132) and that he was "shaking violently when [he] was in there" (A125 at p. 180, lines 18-22).

On February 8, 2013, defendants made a settlement offer of $25,000.01, "plus reasonable attorneys' fees, expenses, and costs to date of this offer for plaintiff's federal claims." (A266). A few days before the trial defense counsel Andrew Wenzel again broached the subject of settlement with one of plaintiff's lawyers, Glenn Miller. The two agreed that the positions of their respective clients regarding the monetary value of plaintiff's case were too far apart and that the case therefore needed to proceed to trial. (A317).

**Motions For Judgment As A Matter Of Law**

On August 18, 2013 defendants filed a motion for summary judgment seeking dismissal of all of plaintiff's claims. (A326). Plaintiff opposed all but that portion of defendants' motion that sought to dismiss his intentional infliction of emotional distress claim, which defendants correctly noted was redundant as "encompassed in plaintiffs' federal and state law claims for false imprisonment and excessive force/assault and battery….". (A365). On September 18, 2013, in an oral decision, the district court denied in its entirety the balance of defendants' motion for summary judgment, citing numerous issues of fact that the court determined could be resolved only by a jury. (A421-422).

On the first day of trial defendants renewed their motion for summary judgment based on the deposition testimony of Spencer Schlee, a non-party

14

witness whom defendants deposed after the court denied their first motion for summary judgment.[6] (A448). The court, after reviewing the transcript of Schlee's deposition, adhered to its earlier ruling and again stated that there remained triable issues of fact sufficient to defeat defendants' motion for summary judgment. (A449-450). The court noted, however, that its ruling was an exception to a trend that it had set for itself in other cases brought pursuant to 42 U.S.C. § 1983: "….I have to say you can probably search my name and come up with more than a dozen, I would venture a guess, of my 400 reported cases that throw cases out for qualified immunity. This is the first of my cases for 1983 that has gone to trial."[7] (A450 at p. 47, lines 6-10).

---

[6] Although plaintiff identified Schlee, a California resident, as a witness in his September 26, 2012 Rule 26 exchange, defendants never subpoenaed Schlee for a deposition. (A38). On September 16, 2013, well past the discovery cutoff date, defendants moved to preclude Schlee from testifying unless he first voluntarily appeared for a deposition in New York. (A30-31). The court granted defendants' motion, stating that "if he won't sit for a deposition, I will preclude him." (A430 at p. 39, lines 16-17). And although defendants never subpoenaed nor requested a deposition of plaintiff's mother, father, or brother—all of whom resided in California and had been identified in plaintiff's Rule 26 exchange—the court *sua sponte* also directed as a condition of their testifying at trial that all three first be produced in New York for deposition: "They'll come in for dinner the night before [the trial]. You can have them two hours the night before they testify; two, four, six…. (A436 at p. 64, lines 19-21).

[7] A search of all reported § 1983 cases **subsequently** decided by Judge Forrest reveals that all of those cases similarly have been summarily dismissed. *See* Anderson v. City of New York, 2013 U.S. Dist. LEXIS 168189 (S.D.N.Y. Nov. 19, 2013) [granting City's motion to dismiss § 1983 malicious prosecution claim]; Perez v. City of New York, 2013 U.S. Dist. LEXIS 168191 (S.D.N.Y. Nov. 21, 2013) [granting City's motion to dismiss § 1983 claim of deliberate indifference to medical needs]; Grantley v. City of New York, 2013 U.S. Dist. LEXIS 165800 (S.D.N.Y. Nov. 21, 2013) [granting City's motion to dismiss § 1983 false arrest and malicious prosecution claims]; Simpson v. City of New York, 2013 U.S. Dist. LEXIS 173472 (S.D.N.Y. Dec. 13, 2013) [granting summary judgment dismissing § 1983 false arrest claim]; El-Nahal v.

After plaintiff rested, defendants moved for judgment as a matter of law under Fed. R. Civ. P. 50(a). (A157). The court granted defendants' motion only with respect to plaintiff's First Amendment claim, noting that plaintiff's speech had not been "chilled" as a consequence of defendants' actions, something the court asserted was required under case law in the Second Circuit. (A157). The court then denied defendants' motion with respect to plaintiff's other claims, again noting that there remained triable issues of fact that could be resolved only by the jury. (A158). The court noted, however, that "if I were able to do so, I would dismiss the entire case based upon the Court's *personal view* of the facts as presented." (A158 at p. 6, lines 12-14) [emphasis added].

On November 21, 2013, after defendants rested, plaintiff moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) on his false arrest claim, arguing that there was no evidence that defendants' initial seizure of plaintiff was justified:

> [O]n no reasonable view of the evidence can a jury conclude that before they initially seized the plaintiff, meaning before they exited the car and grabbed him, that it reasonably appeared to the officers that, one, plaintiff was mentally ill and probably a danger to himself or

Yassky, 2014 U.S. Dist. LEXIS 13522 (S.D.N.Y. Jan. 29, 2014) [granting summary judgment dismissing § 1983 claim of illegal search]; James v. New York City Health & Hospital's Corp., 2014 U.S. Dist. LEXIS 52145 (S.D.N.Y. Apr. 15, 2014) [granting summary judgment dismissing § 1983 claim of employment discrimination]; Law v. Corizon Med. Servs., 2014 U.S. Dist. LEXIS 66395 (S.D.N.Y. May 12, 2014) [granting City's motion to dismiss § 1983 claim for deliberate indifference to medical needs],

others, or that he engaged in any of the enumerated acts under the disorderly conduct statute with the intent of causing public inconvenience, annoyance, alarm, or recklessly creating a risk thereof.

(A455 at p. 4, line 21 to p. 5, line 4). Defendants opposed the motion and cross-moved again for an order granting them judgment as a matter of law on all causes of action. (A456 at p. 5, lines 16-19). The court denied plaintiff's motion, stating that "[t]here's an issue of fact as to the circumstances which were occurring at the scene, and indeed, there's differences between what the two officers have said. And therefore, I will let that fact issue be determined by the jury…." (A456 at p. 6, lines 21-24). Addressing defendants' cross motion, the court stated that "to the extent that it's not on the question of proximate cause or the question of qualified immunity, then it is denied." (A456 at p. 6, lines 2-4). The court then indicated that it would reserve decision on the issues of proximate cause and qualified immunity. (A456 at p. 6, lines 4-8).

**Evidentiary Rulings**

*The email*

Defendants sought to introduce into evidence an email thread between plaintiff and a friend, Tom Michael, wherein the April 14 incident was discussed. (A201-202). Plaintiff objected to the following portion of the email where Michael repeated something he allegedly had been told by a friend, identified by Michael as

17

an employee of the law firm Sivin & Miller, LLP, regarding plaintiff's prospects

for recovering money in a potential lawsuit arising from the incident:

> Just so you know, the way these types of lawsuits work
> are on a contingency fee basis, which means that you
> wouldn't have to pay anything but the firm would take a
> percentage of whatever is recovered.  My friend says that
> the city always settles and these types of suits never go to
> trial.  He doesn't think that you would necessarily
> recover much, but probably enough to cover the cost of
> the bike.

(A202).  The district court initially sustained the objection and ruled that the cited

portion was inadmissible and would be redacted.  (A453).  The court later reversed

its position and allowed the cited portion into evidence, stating that the email was

consistent with defendants' theory "that plaintiff has essentially manufactured a

lawsuit."  (A114 at p. 133, lines 18-23).

### *Spoliation Sanctions*

On November 19, 2013, the second day of trial, defendants filed a

letter motion for spoliation sanctions based on plaintiff's deactivation of his

Facebook account.  (A40).  Plaintiff opposed the motion as untimely—defendants

had known since June 2013 that plaintiff had stopped using and deactivated his

Facebook account in mid 2012—and on the ground that plaintiff's deactivation of

the account neither was designed to nor had the effect of destroying any evidence.

(A72-74).  Indeed, plaintiff supplied defendants with all of the photographs and

messages that he had posted on Facebook from April 14, 2012 until his account

18

was deactivated, although the photos that were produced were black-and-white photocopies that were not to defendants' satisfaction. (A151 at p. 278, line 5 to p. 279, line 22).

In response to defendants' motion, the court told plaintiff during a brief break in his cross-examination to accompany the court's law clerk to chambers to see if plaintiff could "undo" or "reactivate" his Facebook account using a court computer. (A145 at p. 256, lines 4-7; A147 at p. 263, lines 6-23). After plaintiff was unable to do so (A147 at p. 264, lines 6-7) the court granted defendants' spoliation motion by instructing the jury that photographs and texts posted on plaintiff's Facebook account "are either no longer in existence or have limited legibility" and that the jury therefore may infer "that had such evidence been preserved and used at this trial, it would have been unfavorable to plaintiff." (A214).

### *NYPD Guidelines Re Emotionally Disturbed Persons*

Defendants moved in limine to preclude plaintiff from "offering any evidence of NYPD procedure or patrol guide provisions." (A26-28). Plaintiff countered that defendants' admitted awareness and disregard of NYPD guidelines regarding the handling of emotionally disturbed persons (EDPs) was relevant to plaintiff's theory that defendants did not actually believe him to be an EDP, but characterized him as such to cover up their own malfeasance in their use of

excessive force against him. (A36-37, A429). The district court granted

defendants' motion, stating that permitting evidence of policies and procedures

"will unduly condition the jury to believing that if there's been a violation of the

guide, then there's been a violation of the law. So that is denied." (A428 at p. 32,

line 24 to p. 33, line 3).

### Taeza's Force Monitoring Status

Defendants moved in limine to preclude any evidence that Taeza had

been on "Force Monitoring" prior to the incident. (A20). Plaintiff argued that

evidence of Taeza's "Force Monitoring"—and Taeza's acknowledgment that he

knew at the time of the incident that one more civilian complaint of excessive force

could have cost him his job—provided Taeza with ample motive to falsely

characterize plaintiff as an intoxicated, emotionally disturbed person after he used

force against him. (A35, 427-428). The court granted defendants' in limine

motion, holding that the evidence of Taeza's Force Monitoring status was not

"sufficiently probative to outweigh its prejudicial value." (A427 at p. 27, lines 17-

18).

### Precluding Plaintiff's Neuropsychologist

While it permitted plaintiff's expert neuropsychologist, Dr. Wayne

Gordon, to testify that plaintiff suffers from a traumatic brain injury (TBI), it did

not permit Gordon to give his opinion that the TBI was caused by the April 14,

2012 incident with the NYPD. (A631-632). The court struck Gordon's testimony that plaintiff's TBI was caused by "[h]is head being pushed into the hood of a car," stating in front of the jury that there was "no foundation for it to be the hood of a car." (A632 at p. 13, lines 1-6).

### *Aborting The Testimony Of Plaintiff's Treating Psychologist*

During plaintiff's direct examination of his treating psychologist, Dr. Steven Resiner, defense counsel asked the court for a side bar so that he could see the contents of the file that Reisner brought to court. (A624 at p. 8 lines 14-20). The court then reviewed Reisner's file, which contained certain notes prepared by plaintiff at Reisner's request that had not been furnished to defendants. (A625 to 626). In response to the court's query Reisner stated that there might also exist a "cover" email that accompanied the notes and some additional emails on how to get to the courthouse. (A662 at p. 20, line 16 to p. 21, line 11). The court then cancelled Reisner's testimony for the day and instructed him to "gather up the emails, every single one. And we're not going to continue with you today, we have to take a look the (sic) papers." (A628 at p.21, lines 12-16).

Thereafter, based in large part on scheduling difficulties, plaintiff did not re-call Reisner as a witness. (A316). As a result, the court struck what little testimony Reisner offered during his direct examination. (A297).

**The Verdict**

The district court submitted the issues of false arrest and excessive force to the jury, and on November 22, 2013 the jury returned a defense verdict; it answered "Yes" to whether defendants has probable cause or were otherwise privileged to arrest or confine plaintiff and "No" to whether plaintiff proved by a preponderance of the credible evidence that defendants subjected him to excessive force. (A459-460). The jury also resolved against plaintiff five special interrogatories that were posited to assist the court in ruling on the issue of qualified immunity. (A292).

After receiving the defense verdict the court determined that defendants would in any event be entitled to qualified immunity based on the jury's answers to the special interrogatories. (A295). The court also announced that had the jury returned a verdict in favor of plaintiff it was prepared to grant a judgment notwithstanding the verdict on the issue of proximate cause. (A295). The court stated that plaintiff failed to establish at trial that he sustained any damages as a consequence of the alleged false arrest and use of excessive force (A296-297), noting that the testimony of plaintiff's treating psychologist was stricken and plaintiff's neuropsychologist failed to offer any competent evidence that plaintiff's brain injury was caused by the April 14, 2012 incident and not by prior concussions or years of playing high school and college football. (A296-

297).  The court then invited defendants to move for attorneys' fees "based upon the court's view that this case was entirely frivolous, entirely baseless."  (A298 at lines 17-19).  The court added:  "I feel bad for the jury that they had to sit through this, but based upon the state of the record, there were sufficient questions of fact that the court thought that it was prudent to put it to the jury…." (A298)

### The Attorneys' Fees Motion

On December 6, 2013 defendants filed their motion for attorneys' fees, seeking fees in the amount of $235,275.000.  (A238).  Defendants itemized total hours expended in defense of virtually the entire lawsuit (A276-285)[8] but made no attempt to identify those hours incurred solely in defense of claims that allegedly were frivolous.

Plaintiff opposed defendants' motion, arguing that none of his claims was "frivolous, unreasonable, or without foundation."  (A312).  Plaintiff also argued that since defendants failed to identify, as required by Fox v. Vice, 131 S. Ct. 2205 (2011), those fees expended solely in defense of frivolous claims the court could not award *any* attorneys' fees to defendants.  Finally, plaintiff challenged the amount of the fee request and submitted an affidavit to the effect

---

[8]  Defendants excluded only those hours expended in connection with their first motion for summary judgment, stating that "they do not believe that it is appropriate to recover fees for dispositive motions that were not granted."  (A243).

that he still was unemployed, had only nominal personal possessions, no assets or savings, and no independent means of support. (A639).

In their reply papers defendants argued that "plaintiff's entire case was frivolous" and that they therefore were not required to identify hours expended solely in defense of frivolous claims. (A678) [underscore in original]. They also contended that the award was not excessive, since plaintiff, while still unemployed, "is apparently in the same financial position that he was while attending four years of Columbia University at full tuition without visible income or other means of support." (A647).

On March 7, 2014 the district court granted defendants' motion to the extent of awarding attorneys' fees in the amount of $211,747.50. (A652).[9] In its decision the court stated that there was no credible evidence that plaintiff's head struck the hood of the police car and that "plaintiff could not prove the existence of any injuries proximately caused by the alleged incident." (A655). The court similarly made no attempt to separate hours expended by defendants solely in defense of frivolous allegations. Instead, the court opined—based in large part on its assessment of plaintiff's "demeanor" (656)—that "plaintiff wholly lacked credibility at trial" (A653). The court noted, for example that "plaintiff conceded

---

[9] The court reduced the overall fee request by 10% as a result numerous entries in defendants' billing records that the court characterized as "impermissibly vague." (A661-662).

that he had continued playing video games, drinking, and going to strip clubs following the alleged incident, wholly undermining his allegation that as a result of the supposed incident, he was unable to work, leave his apartment for long periods of time, watch television, socialize with friends, or use a computer." (A655-656). The court also determined that there was a "sufficient basis to question the veracity of plaintiff's contention that he is financially infirm" and that the fee award therefore was not excessive. (A663).

## **ARGUMENT**

### **I. THE COURT ERRED IN DISMISSING PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM ON THE GROUND THAT DEFENDANTS' CONDUCT DID NOT CHILL PLAINTIFF'S SPEECH**

This Court reviews the dismissal of plaintiff's First Amendment claim *de novo*. *See* Storman v. Klein, 395 Fed. Appx. 790, 793 (2nd Cir. 2010). The Court recently clarified that "[c]hilled speech is not the *sine qua non* of a First Amendment claim. A plaintiff has standing if he can show either that his speech has been adversely affected by the government retaliation *or that he has suffered some other concrete harm*." Dorsett v. County of Nassau, 732 F.3d 157, 160 (2nd Cir. 2013) [emphasis added].

Here, plaintiff alleges, *inter alia*, that defendants grabbed him, slammed him against the hood of their car, and placed him in handcuffs in retaliation for his having exercised his First Amendment right of free speech—

25

voicing his displeasure at what he considered to be Chen's dereliction of his civic duty. While there was no dispute that plaintiff's comment constituted protected speech,[10] the district court dismissed plaintiff's First Amendment claim on the ground that plaintiff "was, by his own admission, speaking throughout the incident and speaking throughout the hospital stay. And so his speech was, by his own admission, not chilled." (A157 at p. 4, lines 16-20). Since "chilled speech" is not a requirement of a First Amendment retaliation claim, the district court's dismissal of plaintiff's First Amendment claim was erroneous and should be reversed.

## II. THE CUMULATIVE EFFECT OF THE COURT'S ERRONEOUS EVIDENTIARY RULINGS REQUIRES REVERSAL AND REMAND FOR A NEW TRIAL

While generally it "review[s] evidentiary rulings for abuse of discretion," United States v. Graham, 504 Fed. Appx. 63, 65 (2nd Cir. 2012), this Court also has looked to the cumulative effect of those rulings in deciding whether a new trial is appropriate. *See* Haskell v. Kaman Corp., 743 F.2d 113, 122 (2nd Cir. 1984) ["The cumulative effect of the district court's erroneous evidentiary rulings requires reversal and remand for a new trial"]. Even where each error "is harmless in its own right, a new trial may still be granted if the cumulative effect of those

---

[10] "The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston v. Hill, 482 U.S. 451, 461 (1987). *See* Jackson v. City of New York, 2013 U.S. Dist. LEXIS 55186, at *17 (E.D.N.Y. 2013) [noting that even hurling an expletive at a police officer is protected speech under the First Amendment].

otherwise harmless errors deprives a litigant of a fair trial." Barber v. City of Chicago, 725 F.3d 702, 715 (7th Cir. 2013) [citation omitted]. "[A]n erroneous evidentiary ruling warrants a new trial only when 'a substantial right of a party is affected,' as when 'a jury's judgment would be swayed in a material fashion by the error.'" Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 161 (2nd Cir. 2012) [citations omitted].

Here, the district court made several erroneous evidentiary rulings that likely swayed the jury in a material fashion against plaintiff. Collectively, those rulings underscored and lent credence to defendants' theory that plaintiff "manufactured" a lawsuit while denying plaintiff an adequate opportunity to present his theory that defendants manufactured allegations against him to retaliate for his insolence and to avoid charges of police misconduct. Accordingly, the judgment below should be reversed and the case should be remanded for a new trial. Additionally, given the district court's demonstrated hostility to plaintiff, it is respectfully requested that the case be remanded for trial before a different judge. *See* Rivas v. Brattesani, 94 F.3d 802, 808 (2nd Cir. 1996) ["Because the judge's impartiality has been seriously called into question by his comments in front of the jury, ***as well as by his especially hostile comments to defendants' counsel outside the presence of the jury***, plaintiffs are entitled to a new trial before a different judge"] [emphasis added].

**A. The Court Erred In Allowing Into Evidence An Email To Plaintiff That Referenced An Opinion By A Third Party Regarding The Meager Value Of Plaintiff's Potential Lawsuit**

Plaintiff objected to defendants' offer into evidence of a portion of an email that implied that plaintiff did not sustain any significant damages from his encounter with the NYPD but that he would have nothing to lose by suing the City anyway. The email, written by plaintiff's friend Tom Michael, included the following reference to an opinion expressed by Michael's friend:

> Just so you know, the way these types of lawsuits work
> are on a contingency fee basis, which means that you
> wouldn't have to pay anything but the firm would take a
> percentage of whatever is recovered.  My friend says that
> the city always settles and these types of suits never go to
> trial.  He doesn't think that you would necessarily
> recover much, but probably enough to cover the cost of
> the bike.

After initially ruling it inadmissible, the district court reversed course and allowed the email into evidence on the ground that it was consistent with defendants' theory "that plaintiff has essentially manufactured a lawsuit."  (A114 at p. 133, lines 18-23).

Plaintiff has no doubt but that the email had the desired effect of conditioning the jury to adopt defendants' theory that plaintiff subscribed to the sentiments expressed in the email and then acted on those sentiments by "manufacturing" a frivolous lawsuit.  However, since the email was not written by

plaintiff but merely paraphrased a statement that allegedly had been made to plaintiff's friend, the attempted subscription was improper.

In Packer v. United States, 106 F. 906 (2nd Cir. 1901), this Court held that it was improper to allow into evidence letters sent to a party after the fact which contained statements by the author suggesting that the party had engaged in malfeasance. The Court noted that allowing this type of evidence "would be placing a man entirely at the mercy of another if he was bound by what others chose to assert in addressing letters to him." 106 F. at 110 [citation omitted]. In Milburn v. Girard, 455 F. Supp. 293 (E.D. Pa 1978), a "police brutality" case where the prevailing defendants sought attorneys' fees against the plaintiff for allegedly bringing the lawsuit "vexatiously and in bad faith," the district court held that statements contained in a publication by an organization that previously represented the plaintiff could not be used as evidence of the plaintiff's motives in bringing the lawsuit. The court noted that "there is no evidence that [plaintiff] had any influence or control" over what the organization published" (id. at 286), and that "[p]laintiff should not be penalized for a third party's conduct" (id. at 287).

Here, plaintiff had no control over the statements allegedly made to his friend by a third party whom plaintiff had never even met. Thus, it cannot be said that plaintiff subscribed to those statements or that the statements otherwise were relevant to any issue in this case. Any conceivable relevance would in any

event be substantially outweighed by the prejudice that resulted to plaintiff by the email's suggestion that plaintiff manufactured a lawsuit.  Accordingly, it was error to allow the email into evidence.  *See* Fed. R. Evid. 403 [relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice…."].

**B. <u>The Court Erred In Granting Defendants' Untimely Motion  For Spoliation Sanctions With Respect To Plaintiff's Deactivation Of His Facebook Account</u>**

"[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." <u>Residential Funding Corp. v. DeGeorge Fin. Corp</u>., 306 F.3d 99, 107 (2nd Cir. 2002), *citing* <u>Byrne v. Town of Cromwell</u>, 243 F.3d 92, 107-112 (2nd Cir. 2001).  "[T]he spoliation doctrine is predicated on 'evidence actually exist[ing] and [being] destroyed." <u>In re Estate of Jackson v. County of Suffolk</u>, 2014 U.S. Dist. LEXIS 46521, at *21 (E.D.N.Y. 2014), *citing* <u>Orbit One Commc'ns v. Numerex Corp</u>. 271 F.R.D. 429, 441 (S.D.N.Y. 2010).   Accordingly, sanctions are not appropriate where the evidence of destruction is "speculative and conclusory." <u>Lasala v. Marfin Popular</u>

Bank Pub. Co., 410 Fed. Appx. 474, 479 (3rd Cir. 2011).  Additionally, a party seeking spoliation sanctions should do so during pre-trial discovery and should not wait until the eve of trial to make the application.  *See* Baez v. Delta Airlines, Inc., 2013 U.S. Dist. LEXIS 133628, at *33-34 (S.D.N.Y. 2013) [summarizing case law in the Second Circuit disfavoring last-minute applications for spoliation sanctions].

Here, there was no evidence that plaintiff destroyed any text or photographs from his Facebook account.  Indeed, plaintiff testified that notwithstanding the 2012 "deactivation" of his Facebook account he was able to retrieve and provide defendants with copies of all texts and photographs posted during the relevant time period. (A151 at p. 278, line 5 to p. 279, line 22).  That several of those posts were unfavorable to plaintiff (A73-74) belies defendants' assertion that the deactivation of plaintiff's account was undertaken "with a culpable state of mind."

Additionally, the timing of defendants' motion—the trial commenced November 18 and defendants filed their letter motion for sanctions on November 19—was prejudicial to plaintiff.  Had defendants moved in June 2013 when they learned of the deactivation of the Facebook account plaintiff would have had time to address sufficiently defendants' allegations that there "might" be additional material

that was not produced.[11]   By entertaining defendants' motion in the midst of trial the district court placed plaintiff and his counsel in the untenable position of having to respond to defendants' accusation of spoliation on the fly.  After plaintiff was unsuccessful in his attempt to reactivate his Facebook account during a brief break in his cross examination (A151 at p. 256, lines 4-7, A153 at p. 263, lines 6-23), the court granted defendants' motion and charged the jury that certain materials from plaintiff's Facebook account "are either no longer in existence or have limited legibility" and that the jury therefore may infer that "had such evidence been preserved and used at this trial, it would have been unfavorable to plaintiff." (A214).

Defendants' claim that plaintiff destroyed evidence never arose above the level of speculation.  And since plaintiff was not given an adequate opportunity to address defendants' claim, it was error for the court to charge the jury that plaintiff's failure to produce additional photographs or text—the existence of which never was established—entitled the jury to draw an unfavorable inference against plaintiff.

---

[11]   In response to defendants' motion, plaintiff's counsel argued that he "cannot be required during trial to garner the necessary expertise [on the workings of Facebook] to respond intelligently to these and other issues that could have and should have been raised during discovery."  (A73).

**C. The Court Erred In Refusing To Allow Evidence Of Defendants' Knowledge of NYPD Guidelines For Handling Emotional Disturbed Persons (EDPs), Where Plaintiff Claimed That Defendants Did Not Legitimately Believe Him To Be An EDP But Had Him Detained As Such To Punish Him For What They Perceived As His Insolence Towards Them**

Evidence that is otherwise inadmissible may nevertheless be used for the limited purpose of attacking a party's credibility. *See* Walder v. United States, 347 U.S. 62 (1954) [evidence of prior dismissed drug charge admissible to impeach credibility of defendant who testified that drugs were never recovered from him]; Goodman v. Pennsylvania Turnpike Comm'n, 293 F.3d 655, 666 (3rd Cir. 2002) ["A party can attack a witness's credibility using otherwise inadmissible evidence…."]. Thus, while a violation of NYPD guidelines does not necessarily give rise to civil liability (*see* Galapo v. City of New York, 95 NY2d 568 (2000)), evidence of a police officer's *knowledge* of those guidelines may be offered if it bears on credibility or any other relevant issue. *See* Santana v. Artus, 2009 U.S. Dist. LEXIS 126828, at * 74-75 (S.D.N.Y. 2009) [plaintiff permitted to cross-examine officers about Patrol Guide and to allow the jury to consider this testimony on the issue of credibility]; People v. Speringo, 258 AD2d 379, 380 (1st Dept. 1999) [in manslaughter prosecution "court properly admitted into evidence sections of the Police Department Patrol Guide recommending against the carrying of a weapon while off-duty in places where alcoholic beverages were being

consumed, since this evidence was relevant to defendant's awareness of a risk attendant with that act…."].

Here, defendants alleged that their use of force against plaintiff and their forcible removal of him to Bellevue for a psychiatric evaluation were justified by their reasonable perception that plaintiff was an emotionally disturbed person (EDP). Defendants then moved in limine to preclude plaintiff from offering any evidence of NYPD guidelines relating to EDPs. (A26). Plaintiff responded that since defendants followed virtually none of the guidelines prescribed by the NYPD for dealing with EDPs,[12] defendants' awareness of those guidelines at a minimum undermined the credibility of their claim that they genuinely thought that plaintiff was an EDP. (A36-37).

The district court rejected plaintiff's argument and also rejected a compromise request by plaintiff that evidence of EDP guidelines be admitted with

---

[12] Among the guidelines that defendants admittedly disregarded were the following:

- ➢ Safeguard patient at hospital until examined by psychiatrist.
- ➢ Indicate on Aided Report Worksheet, name of psychiatrist.
- ➢ Never Confine EDP's—Or Anybody Else—In Facedown, Prone Positions For Longer Than It Takes to Handcuff Them.
- ➢ Sign in Psychiatric Admitting Log.
- ➢ Upon departing, sign out on the Admitting Log.

(A 314-315, A466-516, A517)

an instruction to the jury "that a violation of the [NYPD Patrol] guide does not establish a cause of action." (A429 at p. 33, lines 6-8). *See* <u>Garcia v. City of New York</u>, 2013 U.S. Dist. LEXIS 147149, at *27-28 (E.D.N.Y. 2013) [NYPD Patrol Guide properly admitted in evidence on plaintiff's *Monell* claim with "instruction about the document's limited relevance"]. The court then stated that it might allow plaintiff to question the officers regarding their understanding of the directives in the Patrol Guide relating to EDPs. (A429 at p. 33, line 15 to p. 34, line 3). However, when plaintiff later attempted to do so, the court sustained defendants' objections and directed plaintiff to move on to another area of questioning. (A197 at p. 148, lines 6-17).

The effect of the court's in limine ruling was to allow defendants to use their purported belief in plaintiff's EDP status as a defense to plaintiff's claims of false arrest and excessive force while simultaneously preventing plaintiff from effectively challenging the bona fides of that defense. Had plaintiff been able to present evidence that defendants were aware of, but disregarded, several NYPD guidelines relating to EDPs, the jury likely would have rejected defendants' claims that their forcible detention of plaintiff was premised and justified on their belief that plaintiff was an EDP.

**D. The Court Erred In Refusing To Allow Evidence Of Taeza's "Force Monitoring" Status For The Limited Purpose Of Demonstrating That Taeza Had A Motive To Falsely Label Plaintiff An EDP**

Taeza acknowledged at his deposition that at the time of the incident he knew that as a consequence of his "Force Monitoring" status[13] any additional complaints against him might result in disciplinary action, including possible termination from his job as an NYPD officer. (A35). Plaintiff therefore sought to offer into evidence Taeza's "Force Monitoring" status for the purpose of demonstrating that after he used force against plaintiff Taeza had a motive to falsely portray plaintiff not as yet another victim of Taeza's excessive force, but instead as an emotionally disturbed person who needed to be subdued. *See, e.g.* Gonzalez v. United States, 2013 U.S. Dist. LEXIS 123950, at *35 (S.D.N.Y. 2013) [noting that evidence of prior civilian complaints against arresting officer "would have supported the defense theory that [the officer]…made false statements to avoid getting into trouble for misconduct…."].[14] While the court stated that it did

---

[13] In court proceedings, the NYPD has described "Force Monitoring" as a "graduated system of measures designed to reform the conduct of potentially violent police officers. …An officer is placed on a Force Monitoring List after a certain number of complaints with the Civilian Complaint Review Board ("CCRB") have been filed against a particular officer. If accusations of excessive force continue, sanctions such as termination of employment may be imposed." Mahan v. City of New York, 2005 U.S. Dist. LEXIS 14322, at *13-14 (E.D.N.Y. 2005)[internal citations to pages of the testimony of NYPD Chief Thomas Lawless omitted].

[14] Plaintiff also argued that Taeza's Force Monitoring status was relevant to Chen's credibility, since Chen made the unlikely claim at his deposition that while he and Taeza had been partners for four years, he had no idea that Taeza ever was on Force Monitoring. (A36).

not view plaintiff's theory regarding Taeza's motives as unreasonable, it nevertheless disallowed the evidence of Taeza's Force Monitoring status as unduly prejudicial. (A427 at p. 27, lines 15-17).[15]

Standing alone, the district court's ruling arguably was not an abuse of discretion. *See* <u>Berkovich v. Hicks</u>, 922 F.2d 1018 (2nd Cir. 1990) [holding that the trial court did not abuse its discretion in precluding evidence of prior civilian complaints against an officer to demonstrate that he had a motive to make a pretextual arrest of the plaintiff]. Where the district court did abuse its discretion was in the one-sided nature of its evidentiary rulings. Collectively, those rulings permitted the jury to review evidence offered by defendants in support of their theory that plaintiff manufactured a lawsuit, but excluded evidence offered by plaintiff in support of his theory that defendants fabricated a claim that plaintiff was an emotionally disturbed person who forcibly had to be taken to the hospital for a psychiatric evaluation.

---

[15] By contrast, the court concluded that any prejudice resulting from the email from plaintiff's friend was outweighed by the probative value that the email had in support of *defendants'* theory that plaintiff had manufactured a lawsuit.

**E.  The Court Erred In Refusing To Allow Plaintiff's Expert Neuropsychologist To Testify That Plaintiff's Traumatic Brain Injury Resulted From Defendants' April 14, 2012 Use Of Force**

Fed. R. Evid. 703 provides, in pertinent part, as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

The Advisory Committee's Note to Rule 703 is instructive and provides, in pertinent part, that medical experts can base their opinions on a variety of factors ordinarily relied upon by others in their field, "including ***statements by patients*** and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." [emphasis added].

Experts are entitled to rely on a plaintiff's self-reported history even where the veracity or reliability of that history is called into question.  *See* Cooper v. Carl A. Nelson & Co., 211 F.3d 1008 (7th Cir. 2000) [district court erred in excluding physician's opinion on cause of plaintiff's injuries on ground that plaintiff allegedly lied to physician about how he was injured and about prior injuries]; Ying Wang v. Yum! Brands, Inc., 2008 U.S. Dist. LEXIS 11188 (E.D.N.Y. 2008) [plaintiff's expert could testify as to cause of plaintiff's injuries

even though the medical records on which he relied were not offered into evidence and plaintiff's medical history was supplied through "an unidentified translator"]. Id. at ** 9-12. Questions regarding the veracity or reliability of a plaintiff's reported history supplied to the expert go merely to the "relative weight to give such evidence" (Ying Wang, 2008 U.S. Dist. LEXIS 11188, at * 8) and are "susceptible to exploration on cross-examination by opposing counsel" (Cooper v. Carl A. Nelson & Co., 211 F.3d at 1021). Additionally, the expert need not have "first hand knowledge or observation" of the factors on which he bases his opinions. United States v. Seale, 600 F.3d 473, 491 (5th Cir. Miss. 2010), *cert. den.*, 131 S Ct 163, *citing* Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993).

Here, plaintiff's expert neuropsychologist, Dr. Wayne Gordon, based his opinion on the cause of plaintiff's traumatic brain injury on many factors, including medical and other records predating the incident, records of treatment in the days and months immediately following the incident, plaintiff's self-reported history of the incident, and his own neuropsychological testing of plaintiff. (A550-555). Notwithstanding that these factors were of "the type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" and that defendants never moved in limine to preclude Gordon's opinion pursuant to Daubert, the district court, noting that Dr. Gordon had no direct knowledge of plaintiff having struck his head against the hood of the police car,

struck Gordon's testimony that that was the cause of plaintiff's traumatic brain injury: "That is – I will strike that testimony. That obviously can't be something which the doctor can know. It can be hitting something, but there's no foundation for it to be a hood of a car. So that is struck. You may approach it in a different way." (A632 at p. 13, lines 3-7).

By striking Gordon's testimony and stating in front of the jury that there was "no foundation" for Gordon's opinion that plaintiff's TBI was causally connected to the April 14 incident the court essentially endorsed defendants' theory that plaintiff was attempting to "manufacture" a lawsuit. It likely had the effect of improperly telling the jury that plaintiff was attempting with "no foundation" to inflate the monetary value of his claim from one that properly should be viewed as worth only nuisance value: "probably enough to cover the cost of [plaintiff's] bike."

**F. The Court Erred In Aborting The Testimony Of Plaintiff's Treating Psychologist On The Ground That He Had Not Provided Certain Documents To Defendants**

"As to some matters relating to the management of proceedings before the court, such as the introduction of evidence and the regulation of the course and scope of examination of witnesses, a district court's discretion is broad indeed." United States v. Local 1804-1, Int'l Longshoremen's Ass'n, 44 F.3d 1091, 1095 (2nd Cir. 1995). Here, however, the court abused its discretion by aborting the

testimony of plaintiff's treating psychologist on the ground that he had not previously provided defendants with notes prepared by plaintiff for the psychologist. Dr. Reisner clearly did not intentionally withhold that document from defendants—the file that he brought with him to court contained the document—and defendants were permitted to interrupt Reisner's direct examination so that they could first review the notes. Rather than cancelling Reisner's testimony for the day, the court easily could have ordered a brief recess to allow defendants the opportunity they claimed they needed to fully digest the notes.

The court's exercise of its discretion in "regulating" the examination of plaintiff's witnesses contrasted with the manner in which it regulated the examination of defendant's sole expert witness. Dr. Robert Hessler, an emergency room physician on duty on the evening plaintiff was brought to Bellevue Hospital Center, was called by the defense to testify as to his purported recollection of items referenced in the hospital record. (A184). When plaintiff objected that defendants were not laying a proper foundation for Hessler's prospective testimony, the court took over the questioning and posed a series of leading questions to Hessler regarding the Bellevue records. (A184 at p. 95, line 10 to p. 96, line 4). The court then announced in front of the jury: "All right. Then they are admitted for the

truth.  They're present sense impressions as well as, among other things, they're in for the truth."  (A184 at p. 96, lines 5-7).

### III.  THE COURT ERRED IN AWARDING ATTORNEYS' FEES TO DEFENDANTS

The decision to award attorneys' fees to a defendant in a lawsuit brought pursuant to 42 U.S.C. § 1983 ordinarily is reviewed for abuse of discretion.  *See* Coe v. Bown of Blooming Grove, 429 Fed. Appx. 55, 58 (2nd Cir. 2011); *but cf*. Velius v. Twp. Of Hamilton, 466 Fed. Appx. 133 (3rd Cir. 2012) ["We exercise plenary review over the District Court's application of the legal standards governing attorneys' fees"]; Davy v. CIA, 456 F.3d 162, 164 (D.C. Cir. 2006) [Circuit Court reviews whether defendant "was eligible for attorney fees -- that is, whether he 'substantially prevailed' -- de novo because it rests on 'an interpretation of the statutory terms that define eligibility for an award'"] [citations omitted].  "A district court 'abuses' its discretion if (1) it 'makes an error of law,… (2) makes a 'clearly erroneous assessment of the evidence,' or (3) renders a decision outside the range of permissible decisions."  Balintulo v. Daimler AG, 727 F.3d 174, 187 (2nd Cir. 2013) [citations omitted].  Here, in awarding attorneys' fees to defendants the district court failed to apply existing law and disregarded its own earlier assessments that plaintiff's proofs were sufficient to survive defendants' multiple motions for summary dismissal of plaintiff's causes of action.

**A. Defendants Did Not Demonstrate That Plaintiff's Lawsuit Was Frivolous, Unreasonable, Or Without Foundation**

To be awarded attorneys' fees in an action brought pursuant to 42 U.S.C. § 1983, the prevailing defendant must demonstrate that the plaintiff's lawsuit was "frivolous, unreasonable, or without foundation." Fox v. Vice, 131 S.Ct. 2205, 2213 (2011) [citation omitted]. The defendant's burden is a heavy one, and "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 178 (2nd Cir. 2004); Jones v. Continental Corp., 789 F.2d 1225, 1232 (6th Cir. 1986) [fee award to civil rights defendant is an "extreme sanction" reserved only for "truly egregious cases of misconduct"]. "This limitation attempts to prevent any chilling effect on the enforcement of civil rights." Myers v. City of West Monroe, 211 F.3d 289, 292, n.1 (5th Cir. 2000).

Here, where it denied in their entirety defendants' two motions for summary judgment, denied defendants' motions pursuant to Fed. R. Civ. P. 50(a), and determined that virtually all of plaintiff's causes of action needed to be resolved by the jury, the district court's post-verdict determination that plaintiff's "action 'was entirely frivolous, entirely baseless'" cannot stand. As this Court noted in LeBlanc-Sternberg v. Fletcher, 143 F.3d 765, 770-771 (2nd Cir. 1998):

> Certain types of judicial rulings strongly indicate that a
> plaintiff's claim should not be deemed frivolous,
> groundless, or unreasonable. For example, a court cannot

> properly consider a claim to be frivolous on its face if it finds that the plaintiff must be allowed to litigate the claim….Nor may a claim properly be deemed groundless where the plaintiff has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law.

[citations omitted]; *see also* R.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1126 (9th Cir. 2011) ["so long as the plaintiffs present evidence that, if believed by the fact-finder, would entitle them to relief, the case is per se not frivolous and will not support an award of attorney's fees"] [citation omitted].

Had the jury resolved in his favor either the false arrest or the excessive force claim that the court determined could not be disposed of summarily, plaintiff would have been the "prevailing party" (*see* Farrar v. Hobby, 506 U.S. 103, 111 (1992) [noting that a "prevailing party" is one who "obtain[s] *at least some relief* on the merits of his claim"] [emphasis added]) and at a minimum would have been entitled to recover damages for his loss of liberty and any physical pain and suffering he endured as a result of the excessive force. *See* Kerman v. City of New York, 374 F.3d 93, 131 (2nd Cir. 2004) ["New York and hornbook authorities reveal that loss of liberty inherent in an unlawful detention is an injury compensable under the common law of torts"]; Atkins v. New York City, 143 F.3d 100, 103 (2nd Cir. 1998) [a finding that he was subject to excessive force necessarily entitles plaintiff to compensatory damages for injuries resulting from

that force]; <u>Robison v. Via</u>, 821 F. 2d 913, 924-925 (2nd Cir. 1987) [plaintiff entitled to recover damages on Fourth Amendment excessive force claim even though she alleged only that a police officer twisted her arm, yanked her, and threw her up against a car, causing only bruising]. In that event, defendants as a matter of law would not have been entitled to **any** attorneys' fees. *See* <u>White v. N.H. Dep't of Employment Sec</u>., 455 U.S. 445, 451 (1982) ["Section 1988 provides for awards of attorney's fees only to the 'prevailing party'"].

That the jury resolved the various triable issues of fact against plaintiff did not entitle the court, in hindsight, to characterize plaintiff's entire case as frivolous and award defendants attorneys' fees. "As the Supreme Court cautioned in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978)… 'it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.' *Id.* at 421-22." <u>Tancredi v. Metro. Life Ins. Co</u>., 378 F.3d 220, 230 (2nd Cir. 2004).

That defendants made a settlement offer during the litigation and broached the subject of settlement again on the eve of trial is further indication that plaintiff's lawsuit was not frivolous. *See* <u>Wigfall v. Sodexo, Inc.</u>, 539 Fed. Appx. 942, 944 (11th Cir. 2013) [noting that settlement offer by the defendant is a factor

weighing against a finding that the plaintiff's lawsuit was frivolous]; E.E.O.C. v. Kimbrough Investment Co., 703 F.2d 98, 103 (5th Cir. 1983) [same].

Finally, the district court's personal assessment of plaintiff's credibility was not a sufficient basis to characterize plaintiff's lawsuit as "frivolous." *See* Yanliang Liu v. United States DOJ, 455 F.3d 106, 115-116 (2nd Cir. 2006) [noting that had the court "relied exclusively on her general credibility ruling to conclude that [petitioner's] application was frivolous, we might have decided that we could summarily reverse the frivolousness decision ourselves (as has occurred in more than one case in our circuit)"] [citations omitted]; Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 105 (2nd Cir. 2001) [notwithstanding trial court's determination that plaintiff "repeatedly lied" during trial, award of attorneys' fees to defendants would be reversed where plaintiff's proofs raised triable issues of fact]; AFSCME v. County of Nassau, 96 F.3d 644, 652 (2nd Cir. 1996) ["But a claim is not necessarily frivolous because a witness is disbelieved or an item of evidence is discounted, disproved or disregarded at trial"]; United States ex rel. Ubl v. IIF Data Solutions, 650 F.3d 445 (4th Cir. 2011) [district court's award of attorneys' fees based on its view that the plaintiff lacked credibility was improper]; Kettering v. Harris, 2009 U.S. Dist. LEXIS 57623, at * 17-20 (D. Colo. 2009) [the district court's personal assessment that the plaintiff lacked credibility is not a sufficient basis for an attorneys' fee award]; Cupp v.

Ziegler, 972 F. Supp. 421 (E.D. Mich. 1997) ["[T]he fact that this court, as the trier of fact, made a determination that defendant's version was more credible and reasonable than plaintiff's does not mean that the lawsuit was 'unreasonable, frivolous, meritless, or vexatious'"].

Credibility determinations are judgment calls that vary not only from juror to juror, but also from judge to judge. And those judgment calls may be informed, in whole or in part, by matters other than the actual merits of a plaintiff's claim(s). *See* Kettering, 2009 U.S. Dist. LEXIS 57623, at * 18 ["It should go without saying that credibility determinations are judgment calls, usually made by the jury but in this case by the judge, based upon many factors"]. To allow a district court to award attorneys' fees against an unsuccessful plaintiff in a § 1983 case based on the court's "personal view" that the plaintiff lacks credibility would announce to those who pursue meritorious claims for vindication of their civil rights that they risk doing so at their peril.

**B. The Court Erred In Awarding Attorneys' Fees Where Neither Defendants Nor The Court Identified Any Fees That Were "Expended Solely Because Of The Frivolous Allegations"**

Even were one or more of plaintiff's claims frivolous, the Court could grant fees to defendants only in connection with time expended "solely because of the frivolous allegations." Fox v. Vice, 131 S. Ct. 2205, 2217 (2011). Where the plaintiff asserts various claims based on essentially the same facts, and some of

those claims are not frivolous, the defendants have the burden of establishing that the fees they incurred were attributable solely to the frivolous claims.  Braunstein v. Ariz. DOT, 683 F.3d 1177, 1189 (9th Cir. 2012).  "[I]f the defendant would have incurred those fees anyway, to defend against non-frivolous claims, then a court has no basis for transferring the expense to the plaintiff."  Fox, 131 S. Ct. at 2215.  "And the appeals court must determine whether the trial court asked and answered this but-for question, rather than some other."  Id. at pp. 2216-2217.

Here, plaintiff proceeded to trial on twelve causes of action:  state-law claims for assault and battery against the City, Chen, and Taeza, § 1983 claims for excessive force against Chen and Taeza, state-law claims for false arrest against the City, Chen, and Taeza, § 1983 claims against Chen and Taeza for false arrest, and First Amendment claims against Chen and Taeza under § 1983.  In moving for attorneys' fees, however, defendants did not even attempt to identify which of those twelve claims were "frivolous, unreasonable, or without foundation," much less those hours expended by defendants "solely because of the frivolous allegations."

Instead, defendants asserted in their reply papers that "plaintiff's entire case was frivolous."  This assertion, which merely echoed the trial court's post-verdict comment (A298), indisputably was inaccurate given the court's earlier determination that virtually all of plaintiff's causes of action—with the exception

48

of the First Amendment claim that the court erroneously dismissed—raised issues of fact that could be resolved only by the jury.

Indeed, the court actually determined not that any of plaintiff's causes of action was frivolous, but rather only that plaintiff's claim that he struck his head against the police vehicle and sustained a traumatic brain injury was frivolous. After the jury announced its verdict, the court stated that it would have "granted a judgment notwithstanding the verdict on the issue of proximate cause, among other things." (A295).[16] The court explained that "there's a lack of showing of substantial or proximate cause of the actual event on any actual injury, so if there is a head injury, which this court finds no evidence that's competent to even prove that fact, certainly there's nothing in the record that would show proximate cause." In its decision and order awarding attorneys' fees, the court again referenced only the alleged absence of any competent evidence that plaintiff's head struck the hood of the car or that he sustained a brain injury as a result thereof and its view that plaintiff exaggerated the severity of his symptoms (A655-656).

That plaintiff may have been unsuccessful at trial in demonstrating that he sustained a traumatic brain injury as a result of the April 14, 2012 incident does not mean that the TBI claim was frivolous. Indeed, plaintiff's claim of a

---

[16] The court did not specify any other ground on which it would have granted a judgment notwithstanding the verdict.

49

causally related TBI was amply supported by, among other things, the findings contained in Dr. Gordon's June 26, 2013 report.  However, when plaintiff attempted to elicit testimony from Gordon regarding the causal connection, the court struck the testimony (A632 at p. 13, lines 3-7) and then instructed the jury to disregard it.  (A213).  In Ehrlich v. Inc. Village of Sea Cliff, 389 Fed. Appx. 59, 61 (2nd Cir. 2010), this Court noted that "[i]t would be inappropriate…for a district court to base a finding of frivolousness upon the fact that a plaintiff's 'witness is disbelieved or an item of evidence is discounted, disproved or disregarded at trial.'", *citing* AFSCME v. County of Nassau, 96 F.3d 644, 652 (2nd Cir. 1996). Similarly, in Figures v. Bd. of Pub. Utils., 967 F.2d 357, 362 (10th Cir. 1992), the court reversed an award of attorneys' fees and stated that the plaintiff should not have been required to "anticipate adverse evidentiary rulings and dismiss a defendant prior to trial or risk being held liable for attorney's fees pursuant to § 1988."  And in Coats v. Pierre, 890 F.2d 728, 733-734 (5th Cir.  1989), the court held that where it sustained objections to testimony that, if admitted, would have supported the plaintiff's claims, "the district court could not properly impose attorney's fees upon him on this ground under Section 1988."

Plaintiff acknowledges that the *jury*, as fact finder, reasonably could have rejected plaintiff's claim that his head struck the hood.  However, since there

50

was ample circumstantial evidence to allow the jury to resolve that issue,[17] it cannot be said that plaintiff's claim in that regard was "frivolous."

But even had the district court a valid basis for determining that plaintiff's claim of a causally connected traumatic brain injury was frivolous, neither defendants nor the court attempted, as required by <u>Fox v. Vice</u>, to identify any hours expended by defendants solely because of that frivolous allegation. Those hours, in any event, would have been negligible; while they claimed for the first time after trial that they had retained a neuropsychologist to assist them in evaluating plaintiff's medical records (A251), defendants never exchanged a report by that unnamed expert pursuant to Fed. R. Civ. P. 26(a)(2), much less called or even identified their expert as a trial witness. Nevertheless, the court improperly awarded attorneys' fees to defendants for virtually all hours expended in defense of plaintiff's lawsuit without even attempting to identify those hours expended solely in connection with the claims that were alleged to be frivolous.

---

[17] *See, e.g.* <u>Reck v. Pacific-Atlantic S.S. Co.</u>, 180 F.2d 866 (2nd Cir. 1950) [circumstantial evidence sufficient to infer that plaintiff's head was struck by a hook extending from defendant's train]; <u>Bultema v. Benzie County</u>, 146 Fed. Appx. 28, 36 (6th Cir. 2005) ["While Stariha did not actually see [defendant's] hand make contact with [plaintiff's] face, we can draw the reasonable inference from the facts….that….[defendant] hit [plaintiff] on the side of his head"]; <u>Walmsley v. City of Philadelphia</u>, 872 F.2d 546 (3rd Cir. 1989) [notwithstanding absence of direct evidence, trial court erred in dismissing plaintiff's excessive force case where there was circumstantial evidence that he was struck in the head by police officers]; <u>Dorsett v. American Isuzu Motors, Inc.</u>, 805 F. Supp. 1212, 1221 (E.D. Pa. 1992) ["[E]ven if there were no direct evidence of a 'head strike' (i.e. if there was no bruising to [plaintiff's] head, and if no witness could identify a 'head strike mark' on the roof of the Trooper) the jury would still be permitted to infer that a head strike had occurred"].

**C. The Court Erred In Awarding $211,747.50 Against A 25-Year-Old Unemployed Plaintiff Who Has No Independent Means Of Support**

While in a § 1983 case "[a]n award to a prevailing plaintiff is intended to make it easier for a plaintiff of limited means to bring a meritorious suit, an award to a prevailing defendant is intended to deter unfounded lawsuits, not to make the defendant whole." Broyles v. Texas, 2009 U.S. Dist. LEXIS 64080, at *44 (S.D. Tex. 2009), *citing* Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 420 (1978). In determining what amount would suffice as deterrence, the court therefore should take into account the plaintiff's ability to pay the award. Garner v. Cuyahoga County Juvenile Court, 554 F.3d 624, 643 (6th Cir. 2009).

Here, plaintiff submitted an affidavit stating that he still is unemployed, has only nominal personal possessions, no assets or savings, and no independent means of support. (A639). And while they engaged in a scorched earth investigation of plaintiff's activities since the time of his April 14, 2012 encounter with the NYPD,[18] defendants offered no evidence to contradict plaintiff's claim in that regard. Instead, defendants speculated that "plaintiff is apparently in the same financial position that he was while attending four years of

---

[18] For example, based on the questions posed during their cross-examination of plaintiff, it appears that defendants dispatched investigators to virtually every location in New York and California from which plaintiff made ATM withdrawals.

Columbia University at full tuition without visible income or other means of support." (A645).

The district court rejected plaintiff's claim of financial hardship, stating that "[w]hile plaintiff may very well lack an 'independent means of support,' that is a separate issue from whether there are ways in which plaintiff can obtain funds." (A661).[19] The court then awarded defendants virtually the entire amount they requested, thus making defendants "whole" and obligating plaintiff to pay an amount far in excess of what he can afford and what would be considered reasonable to deter what the court deemed as frivolous conduct by plaintiff.

---

[19] The court also noted that "plaintiff has access to a steady source of cash, a car, and other accouterments of a man with some means." (A663). While it did not identify any of the other accouterments, the court's reference to "a steady source of cash" presumably referred to ATM withdrawals made by plaintiff during the 19-month period immediately following the incident. (A110-128). The records of those withdrawals, produced by defendants during their cross-examination of plaintiff, document that virtually all of them were for less than $100. Id.

# **CONCLUSION**

Based on the foregoing, plaintiff submits that the judgment below should be reversed and the case should be remanded to the district court for a new trial before a different judge. Additionally, the district court's decision and order awarding attorneys' fees to defendants should be reversed and the award should be vacated in its entirety.

Dated: June 2, 2014

Sivin & Miller, LLP


By _____
Edward Sivin
Attorneys for plaintiff-appellant
20 Vesey Street, Suite 1400
New York, NY 10007
(212) 349-0300

# CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,961 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Dated:  June 2, 2014

<div style="margin-left: 50%;">

Sivin & Miller, LLP

By _____
Edward Sivin
Attorneys for plaintiff-appellant
20 Vesey Street, Suite 1400
New York, NY  10007
(212) 349-0300

</div>

# SPECIAL APPENDIX

# **Table of Contents**

**Page**

Order of the Honorable Katherine B. Forrest,
dated November 22, 2013, Appealed From .................................... SPA1

Judgment of the United States District Court,
dated November 22, 2013, Appealed From .................................... SPA2

Notice of Appeal, dated December 23, 2013 ......................................... SPA3

Memorandum Decision and Order of the Honorable
Katherine B. Forrest, dated March 7, 2014, Appealed From ......... SPA4

Amended Notice of Appeal, dated March 10, 2014 ............................ SPA17

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 2 2 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                          :
ANDREW ABEYTA,                            :
                                          :
                    Plaintiff,            :        12 Civ. 5623 (KBF)
          -v-                             :
                                          :            ORDER
THE CITY OF NEW YORK, et al.,             :
                                          :
                    Defendants.           :
                                          :
----------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

On November 22, 2013, the jury returned a verdict on behalf of the defendants in the above-referenced action.

The jurors also returned special interrogatories on the issue of qualified immunity, finding in defendants' favor as to all questions posed. Accordingly, the Court hereby finds as a matter of law that defendants are protected by qualified immunity as to all counts.

Additionally, the Court notes that each answer separately and individually supports a sufficient basis for the Court to find qualified immunity as a matter of law.


      SO ORDERED.

Dated:      New York, New York
            November 22, 2013

                                    _____
                                        KATHERINE B. FORREST
                                      United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 2 2 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                    :
ANDREW ABEYTA,                                      :
                                                    :
                        Plaintiff,                  :        12 Civ. 5623 (KBF)
                                                    :
            -v-                                     :
                                                    :        JUDGMENT
                                                    :
THE CITY OF NEW YORK, et al.,                       :
                                                    :
                        Defendants.                 :
-------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

    On November 22, 2013, the jury returned a verdict on behalf of the

defendants.  Accordingly, the Court hereby ENTERS JUDGMENT for the

defendants in the above-referenced action.

    The Court FURTHER ORDERS the imposition of costs as against plaintiff.

The Court invited an application by defendants for the imposition of attorneys' fees.


        SO ORDERED.

Dated:      New York, New York
            November 22, 2013

                                    _____
                                        KATHERINE B. FORREST
                                        United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
ANDREW ABEYTA,

                  Plaintiff,           NOTICE OF APPEAL

        -against-

THE CITY OF NEW YORK,           Case No. 12 Civ. 5623 (KBF)
NANHAO CHEN and ALLAN TAEZA,

                  Defendants.
------------------------------X

       **NOTICE IS HEREBY GIVEN** that plaintiff Andrew Abeyta hereby appeals

to the United States Court of Appeals for the Second Circuit Court of Appeals from the final

judgment entered in this action on the 22nd day of November 2013, and plaintiff also appeals

from the Order of the Hon. Katherine B. Forrest, United States District Judge, entered

November 22, 2013, which found as a matter of law that defendants are protected by

qualified immunity.

Dated:  New York, New York
       December 23, 2013

                                Yours, etc.
                                SIVIN & MILLER, LLP

                                By_____
                                 Edward Sivin
                                 Attorneys for plaintiff
                                 20 Vesey Street, Suite 1400
                                 New York, NY  10007
                                 (212) 349-0300

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 0 7 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :
ANDREW ABEYTA,                                        :
                                                      :
                            Plaintiff,                :        12 Civ. 5623 (KBF)
          -v-                                         :
                                                      :        MEMORANDUM
                                                      :        DECISION & ORDER
THE CITY OF NEW YORK, et al.,                         :
                                                      :
                            Defendants.               :
------------------------------------------------------------ X
KATHERINE B. FORREST, District Judge:

On July 23, 2012, plaintiff Andrew Abeyta ("plaintiff" or "Abeyta") filed this action against defendants Nanhao Chen, Allan Taeza,[1] and the City of New York (collectively, "defendants"), alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 and various state laws. (ECF No. 1.) On August 18, 2013, defendants filed a motion for summary judgment,[2] which the Court denied on the record on September 18, 2013. (ECF No. 66.) The Court identified a handful of disputed facts that precluded summary judgment. (9/18 Tr. 3-6.) The facts at issue largely rested on plaintiff's credibility.

On November 18-22, 2013, the action was tried before a jury, and on November 22, 2013, after only 1.5 hours of deliberation, the jury returned a verdict on behalf of defendants. The jury also completed special interrogatories on the issue of qualified immunity and found in defendants' favor as to each question

---

[1] Defendant Taeza was initially a John Doe defendant (ECF No. 1); he was named in an amended Complaint filed on October 15, 2012. (ECF No. 5.)
[2] In the alternative, defendants sought to bifurcate liability from damages. (ECF No. 19.)

1

posed. Based upon those factual determinations, the Court stated that based on the jury's responses to the special interrogatories, plaintiff's case was barred by qualified immunity.[3] The Court further noted that it had been prepared, were the jury to have returned any other verdict, to grant a judgment notwithstanding the verdict based on the lack of credible evidence on the issue of proximate cause. (11/22 Tr. 6.)[4]

As the Court stated in its concluding remarks, plaintiff wholly lacked credibility at trial. Indeed, what appeared to be disputed issues of fact at summary judgment were revealed as obviously fictitious allegations at trial. Having had the opportunity to assess plaintiff's demeanor and credibility, it became apparent to this Court that plaintiff had fabricated numerous facts sufficient to survive summary judgment but wholly insufficient when against the backdrop of his own credibility.

At the close of trial, this Court invited defendants to file a motion for attorneys' fees (see ECF No. 78); on December 6, 2013, defendants filed such motion pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)(2).[5] For the reasons set forth below, defendants' motion for attorneys' fees is GRANTED.

---

[3] The Court noted that each special interrogatory answer separately and individually provided a sufficient basis in the law for qualified immunity. (ECF No. 77.)

[4] The Court also noted that no evidence whatsoever was presented to suggest that plaintiff was injured as a result of the false arrest. (11/22 Tr. 8.)

[5] Defendants state in their motion that they shall submit a separate application for costs pursuant to Federal Rule of Civil Procedure 54(d)(1). (See Defs.' Mot. at 6 n.3.)

2

# SPA6

I.   DISCUSSION

Pursuant to 42 U.S.C. § 1988, the court has discretion to allow the prevailing party in a Section 1983 action to recover reasonable attorneys' fees and costs.  48 U.S.C. § 1988(b); Fox v. Vice, – U.S. – , 131 S.Ct. 2205, 2213 (2011); see also Carrion v. City of New York, No. 01 Civ. 2255, 2003 WL 22519438, at *1 (S.D.N.Y. Nov. 4, 2003).  The purpose of awarding such fees is "to discourage litigants from bringing frivolous cases[] and [to] spare members of the public from the expense of defending against baseless allegations." Kappenberger v. Oates, 663 F. Supp. 991, 992 (S.D.N.Y. 1987) (internal quotation marks and citation omitted); see also Christianburg Garment Co. v. EEOC, 434 U.S. 412, 420 (1978) (explaining that "Congress intended to deter the bringing of lawsuits without foundation by providing that the prevailing party – be it plaintiff or defendant – could obtain legal fees") (internal quotation marks and citation omitted); Harbulak v. County of Suffolk, 654 F.2d 194, 195 (2d Cir. 1981) (holding that "it was an abuse of discretion to deny an award of attorney's fees to the defendant" under a similar fees statute).

A court may award such fees "'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" Fox, 131 S.Ct. at 2213 (quoting Christianburg Garment Co., 434 U.S. at 416 ("[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.")).  A finding of bad faith is not required; rather, bad faith merely strengths the basis for the imposition of fees. Christian Garment Co., 434 U.S. at

3

422. But see General Camera Corp. v. Urban Dev. Corp., 734 F.2d 468, 469-70 (2d Cir. 1984) (J. Mansfield concurring) (arguing relevant legislative history not considered by the Supreme Court in, inter alia, Christian Garment Co., requires a showing of objective bad faith).

After presiding over four days of trial in this case, the Court stated in open Court that it believed the action "was entirely frivolous, entirely baseless." The Court took the unusual step of stating: "I feel bad for the jury that they had to sit through this." (11/22 Tr. 9.) Plaintiff's testimony was contradictory, unbelievable, and wholly lacking in veracity. Specifically, while it seemed at the summary judgment stage that the officer defendants could have slammed plaintiff's head against the hood of their squad car, it became clear at trial that there was no credible evidence to support such a claim. Similarly, while it seemed at the summary judgment stage that plaintiff could have suffered life-altering brain injuries as a result of the alleged incident, it became evident at trial that plaintiff could not prove the existence of any injuries proximately caused by the alleged incident. See Carrion, 2003 WL 22519438, at *2 ("A review of the record reveals that this was nothing more than a frivolous case. The court reaches this conclusion after reviewing all of the disturbing factors that came to light at trial.").

For example, during plaintiff's cross-examination, plaintiff conceded that he had continued playing video games, drinking, and going to strip clubs following the alleged incident, wholly undermining his allegation that as a result of the supposed incident, he was unable to work, leave his apartment for long periods of time, watch

4

# SPA8

television, socialize with friends, or use a computer. Plaintiff attempted to explain away this behavior by stating that he was unhappy and lonely. Having observed plaintiff's demeanor during this portion of the testimony, however, it was shockingly clear that plaintiff was being untruthful on the witness stand.[6]

Put simply, plaintiff's allegations were frivolous, unreasonable, and without foundation; while such fact did not come through in the summary judgment papers, it was frustratingly evident at trial that this was a case that never should have been filed. As such, the Court hereby finds the imposition of attorneys' fees warranted in this case.

In order to determine an appropriate fee award, courts typically start with the lodestar amount, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Healey v. Leavitt, 458 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also Anthony v. Franklin First Fin., Ltd., 844 F. Supp. 2d 504, 506 (S.D.N.Y. 2012) (explaining that "[t]he Supreme Court recently approved the lodestar approach over the more discretionary approach that had been adopted by the 5th Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)). Counsel for the prevailing party must submit evidence in support of its proposed figures, and "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 433-

---

[6] Plaintiff still contends that he suffered a "traumatic brain injury." (See Declaration of Edward Sivin, Ex. 25 ("Abeyta Aff.") ¶ 2, Jan. 7, 2014, ECF No. 97-25.)

34. Contemporaneous billing records are required. <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983) (citation omitted); <u>see also</u> <u>Scott v. City of N.Y.</u>, 626 F.3d 130, 132 (2d Cir. 2010).

A reasonable hourly rate is based on "the [current] prevailing market rate for lawyers in the district in which the ruling court sits." <u>Anthony</u>, 844 F. Supp. 2d at 507; <u>see also</u> <u>Costello v. Flatman</u>, No. 11 Civ. 287, 2013 WL 1296739, at *4 (E.D.N.Y. Mar. 28, 2013) ("A reasonable hourly rate is 'the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively'") (quoting <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008)). "A court may determine the reasonable hourly rate by relying both on 'its own knowledge of comparable rates charged by lawyers in the district,' as well as on 'evidence proffered by the parties.'" <u>Adorno v. Port Auth. of N.Y. & N.J.</u>, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (citing <u>Morris v. Eversley</u>, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004); <u>Farbotko v. Clinton County of N.Y.</u>, 433 F.3d 204, 209 (2d Cir. 2005)).

Here, defendants seek a "blended" rate of $300/hour for the work completed by five attorneys "who were the most central to the defense of the case from the time it was filed through trial." (Defendants' Motion for Attorneys' Fees Pursuant

6

to Fed. R. Civ. P. 54(d)) ("Defs.' Mot.") ¶¶ 29, 31, Dec. 6, 2013, ECF No. 91.)[7] The qualifications of these individuals are as follows:

- Deputy Division Chief Patricia Miller graduated from law school in 1988, clerked for a district judge, and worked as a litigation associate at a "prominent law firm in New York" prior to joining the New York City Law Department in 1992; Ms. Miller is an adjunct law professor at Fordham University School of Law. (Id. ¶ 29.)

- Senior Counsel Caryn Rosencrantz graduated from Brooklyn Law School in 1995 and has over 15 years of federal civil rights experience defending the City and the State in district court. She has been a team leader at the New York City Law Department since 1995 and acted as a supervisor to the lead attorney on this matter, Tobias Zimmerman. (Id.)

- Senior Counsel Andrew Wenzel was lead trial counsel in this matter. He has been practicing for seven years; he worked at the Queens County District Attorney's Office prior to joining the New York City Law Department. (Id.)

- Former Assistant Corporation Counsel Katherine Macfarlane graduated from Loyola Law School in 2006, clerked at both in both district court and

---

[7] Defendants do not seek fees for approximately 87.25 hours expended by Tobias E. Zimmerman in connection with defendants' motion for summary judgment. (Defs.' Mot. ¶ 14.) Defendants similarly do not seek fees for work completed by two litigation paralegals and other support staff "because non-attorney staff of the New York City Law Department are not required to keep case-by-case records of their activities." (Declaration of Tobias E. Zimmerman in Support of Defendants' Motion for Attorneys' Fees Pursuant to Fed. R. Civ. P. 54(d)) ("Zimmerman Decl.") ¶ 27, Dec. 6, 2013, ECF No. 92.)

in the Ninth Circuit Court of Appeals, and worked as an associate at a large law firm prior to joining the New York City Law Department in 2011. Ms. Macfarlane initially was lead counsel on this matter. (Id.)

- Assistant Corporation Counsel Tobias Zimmerman graduated from Georgetown University Law Center in 2000. Prior to joining the New York City Law Department in 2011, he worked as an associate at a large law firm in Washington, D.C. (Id.)

The New York City Law Department does not routinely bill its client for professional services and therefore does not have a formal "billing rate." While "the Second Circuit has not endorsed the use of a blended rate," Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc., No. 11 Civ. 3252, 2013 WL 4039370, at *2 (E.D.N.Y. Aug. 7, 2013) (citation omitted), the Court finds that a blended rate is appropriate under these circumstances given the varying levels of experience in play. See id. (citing cases). Moreover, the Court finds based on the prevailing fees in this district for similar matters, as well as the Court's own knowledge of prevailing hourly rates, that $300 is a reasonable hourly rate for this action. See, e.g., City of New York v. Venkataram, No. 06 Civ. 6578, 2012 WL 2921876, at *2 n.2 (S.D.N.Y. July 18, 2012) (allowing attorneys to be awarded fees at hourly rates of $350 and $250 respectively in light of each attorney's experience, albeit for only 1.5 and 3 hours of work as to each); Adams v. New York State Educ. Dep't, 630 F. Supp. 2d 333, 349-50 (S.D.N.Y. 2009) (approving an hourly rate of $350 for a senior

litigator who had been working as an attorney at the New York City Law Department since graduating from law school in 1988).

In determining the proper number of hours for which a defendant should be compensated, "the district court should exclude excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citations omitted). The Court must "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997).

Here, defendants seek attorneys' fees for a total of 784.25 hours: 85.5 hours on behalf of Ms. Miller; 22 hours on behalf of Ms. Rosencrantz; 262.50 hours on behalf of Mr. Wenzel; 24.25 hours on behalf of Ms. Macfarlane; and 477.25 hours on behalf of Mr. Zimmerman (minus the 87.25 hours Zimmerman spent in connection with defendants' motion for summary judgment). (Defs.' Mot. ¶ 29.) In support of their request, defendants provide a spreadsheet detailing the relevant work completed by each attorney. (See Zimmerman Decl., Ex. F.)

Having reviewed the spreadsheet provided by defendants, the Court finds that while most entries on the spreadsheet are sufficiently specific so as to justify an award of attorneys' fees, a selection of the entries are impermissibly vague. See

9

e.g., Wise v. Kelly, 620 F. Supp. 2d 435, 452 (S.D.N.Y. 2008) (reducing fees by 25% because certain entries were too vague to enable the court to assess their reasonableness). For example, on September 13, 2013, Patricia Miller spent two hours engaging in "Supervision/Management" and one hour in a meeting, but no additional information was provided. (Id. at 5.)[8] Similarly, there are numerous entries entitled "Trial Preparation" for which no explanation is provided. (See, e.g., id. at 7 (for five hours of work by Andrew Wenzel on October 25, 2013); id. at 8 (for nine hours of work by Andrew Wenzel on October 28, 2013); id. (for six hours of work  by Andrew Wenzel on October 30, 2013).)

Accordingly, given the vague nature of certain entries in the spreadsheet documenting the hours worked by defendants' counsel, the Court hereby decreases the total number of hours for which compensation is sought by 10%. See New York State Ass'n for Retarded Children, 711 F.2d at 1146 (explaining that where a voluminous fee application is made, "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application").

Plaintiff argues in opposition to defendants' motion for fees that he "lacks the financial wherewithal to pay even a fraction of the attorney[s'] fee requested by defendants." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for An Attorney's Fee ("Pl.'s Mem.") at 8, Jan. 7, 2014, ECF No. 98 (citing to a Sixth Circuit case that reversed a fee award which failed to take into account the

---

[8] There are numerous other entries by Patricia Miller, including those on October 21, 2013 and October 24, 2013, that have the same issue. (See Zimmerman Decl., Ex. F at 7.)

plaintiff's ability to pay); see also Abeyta Aff. ¶¶ 1-2.)[9] In support of this assertion,

plaintiff submits an affidavit stating he has been unemployed since he was

terminated from his job in June 2012; he also states that he currently resides with

his mother, has no income, and has "no independent means of support." (Abeyta

Aff. ¶ 1.) Plaintiff contends: "Other than my clothing and some other nominal

personal possessions, I have no assets and no savings. I am still receiving

treatment for symptoms arising from my traumatic brain injury." (Id. ¶ 2.)

In response, defendants do not contest that the Court may take into account

plaintiff's ability to pay, but argue that "[t]he limited evidence introduced at trial,"

combined with the fact that plaintiff now appears to be in the same financial

position he was in while attending Columbia University "at full tuition without

visible income or other means of support," suggests "plaintiff has access to, or at

least enjoys the support of, financial resources beyond merely his 'clothing and some

other nominal assets.'" (Defendants' Reply in Support of their Motion for Attorneys'

---

[9] In the case cited by plaintiff, Garner v. Cuyahoga County Juvenile Court, 554 F.3d 624, 643 (6th Cir. 2009), the court stated:

> Our 'primary concern in an attorney fee case is that the fee awarded be reasonable.' Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999). That concern is heightened in cases such as this, where attorney fees are assessed against losing plaintiffs in a civil rights action, because such an award 'is an extreme sanction, and must be limited to truly egregious cases of misconduct.' Jones v. Cont'l Corp., 789 F.2d 1225, 1232 (6th Cir. 1986) (emphasis added). Although the district court undoubtedly has discretion in determining whether awarding attorney fees is appropriate, it nevertheless 'remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award.' Hensley, 461 U.S. at 437.

Case 1:12-cv-05623-KBF   Document 101   Filed 03/07/14   Page 12 of 13

Fees Pursuant to Fed. R. Civ. P. 54(d) ("Defs.' Reply") ¶ 10, Jan. 14, 2014, ECF No. 99.) Defendants further argue that plaintiff's purported inability to pay should not preclude the imposition of attorneys' fees altogether. (Id.)

The Court notes that bank and other records introduced at trial indicate that the plaintiff has access to a steady source of cash, a car, and other accouterments of a man with some means. This, combined with the evidence presented at trial regarding plaintiff's activities following the termination of his employment, provides the Court with a sufficient basis to question the veracity of plaintiff's contention that he is financially infirm. While plaintiff may very well lack an "independent means of support," that is a separate issue from whether there are ways in which plaintiff can obtain funds.

## II.   CONCLUSION

For all of the reasons aforementioned, the Court hereby awards defendants $211,747.50 in attorneys' fees, payable by plaintiff.[10] The Court has calculated this amount by multiplying the number of hours of work for which defendants may recover by $300 as a reasonable "blended" hourly rate, minus 10% for vague billing records.

---

[10] The Court recognizes that this award is significant, but plaintiff brought it upon himself. Plaintiff went to trial on a frivolous case based on what clearly appeared at trial to be fictitious facts; he produced experts that needed to be defended against, and failed to produce certain discovery until the eve of trial (had defendants had access to the discovery in a timely fashion, perhaps their motion for summary judgment could have more effectively illustrated the problems with plaintiff's claims). (See Zimmerman Decl. ¶¶ 23-26.) Plaintiff may not avoid the consequences of his actions simply because he took the case all the way to trial and as such, required defendants to spend a great deal of time, energy, and money on the case.

# SPA16

Defendants may submit to the judgment clerk a separate application for costs pursuant to Federal Rule of Civil Procedure 54(d)(1) within **one week** of the date of this Order.  (See Defs.' Mot. at 6 n.3.)

SO ORDERED.

Dated:     New York, New York
           March 7, 2014

                                           KATHERINE B. FORREST
                                         United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ANDREW ABEYTA,

|  |  |
|---|---|
| Plaintiff, | AMENDED<br>NOTICE OF APPEAL |
| -against- | Case No. 12 Civ. 5623 (KBF) |
| THE CITY OF NEW YORK,<br>NANHAO CHEN and ALLAN TAEZA, |  |
| Defendants. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**NOTICE IS HEREBY GIVEN** that plaintiff Andrew Abeyta hereby appeals

to the United States Court of Appeals for the Second Circuit Court of Appeals from the final

judgment entered in this action on the 22nd day of November 2013, and plaintiff also appeals

from the Order of the Hon. Katherine B. Forrest, United States District Judge, entered

November 22, 2013, which found as a matter of law that defendants are protected by

qualified immunity, and plaintiff also appeals from the Decision and Order of the Hon.

Katherine B. Forrest, entered March 7, 2014, which granted defendants' motion for

attorney's fees pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)(2).

Dated: New York, New York
       March 10, 2014

Yours, etc.
SIVIN & MILLER, LLP

By _____
   Edward Sivin
Attorneys for plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
(212) 349-0300